Gwendolyn L. GROOMS, Plaintiff,

v.

MOBAY CHEMICAL CORPORATION, Defendant.

Civ. A. No. 2:88–2237–18.

United States District Court,
D. South Carolina,
Charleston Division.

Aug. 15, 1991.

Alan Toporek, Charleston, SC, Michael T. Rose and Norbert E. Cummings, Jr., Summerville, SC, for plaintiff.

Lucinda J. Haley, Bradish J. Waring, Charleston, SC, and John J. Myers, Pittsburgh, PA, for defendant.

## ORDER

NORTON, District Judge.

This matter is before the Court on plaintiff Gwendolyn Grooms' and defendant Mobay Chemical Corporation's motions for summary judgment.

## BACKGROUND

Plaintiff Gwendolyn Grooms filed the instant action against defendant Mobay Chemical Corporation ("Mobay") on August 31, 1988. Ms. Grooms alleges several causes of action against Mobay: (1) that she was terminated by Mobay because of her age in violation of the Age Discrimination in Employment Act, 29 U.S.C. sections 621, *et seq.* (the "ADEA"); (2) that Mobay breached an employment contract; (3) that when Mobay terminated Ms. Grooms it violated public policy by discriminating against Ms. Grooms and by breaching an employment contract; (4) that Mobay breached an implied covenant of good faith and fair dealing by breaching its employment contract; and (5) that Mobay is liable under a promissory estoppel theory for violating the promises which Ms. Grooms claims make up the employment contract.

Ms. Grooms began working for Mobay in 1971 as a lab technician at its Bushy Park, South Carolina plant. Mobay, a wholly-owned subsidiary of the West German corporation Bayer AG, manufactures organic chemicals, dyes and pigments, agricultural chemicals and plastics. The company is organized into several divisions, including the Dyes, Pigments and Organics division (the "DPO" division). The Bushy Park plant is a multi-divisional plant, but the DPO division makes up a large majority of its operations. Ms. Grooms was employed by this division.

Assistant lab manager Frank Palazzolo believed that the lab technicians should be "cross-trained" so as to be able to work in numerous areas of the lab. Mr. Palazzolo

therefore adhered to the practice of rotating assignments throughout the labs so that the technicians would become knowledgeable about the different jobs in the labs. Ms. Grooms demonstrated her disdain for rotating assignments and expressed her preference for working in one specific area. Ms. Grooms does not deny that she actively resisted rotating.[1] Because of Ms. Grooms vehement resistance to rotating, she ultimately was assigned to a permanent position, where she remained for three years until her termination.

In 1986, Mobay decided to consolidate a number of separately run laboratories into two laboratories: a quality assurance laboratory and a research and development laboratory. Mobay chose to consolidate the laboratories because it faced a significantly decreased demand for its Resolin dyes. Due to the decrease, Mobay decided to discontinue production of those dyes. Because of the elimination of this production, Mobay determined that it no longer needed the number of laboratories currently maintained. Furthermore, Mobay decided that consolidation necessitated a reduction in its workforce.

Dr. Robert Hoguet[2] and Dr. James Good were given the responsibility of developing the new consolidated laboratories. These managers devised position descriptions, established the laboratories' structures and selected personnel to fill the positions from the pool of employees who worked in the laboratories prior to consolidation.

Mobay's managers determined that in order to run the new laboratories more efficiently with the reduced workforce, the technicians should be flexible in the types of work they performed. Therefore, in choosing which employees to fill the positions, the managers assessed whether the employees were flexible and willing to rotate. Ms. Grooms was terminated on September 2, 1986. She was informed that she was being terminated as a result of a reorganization, and that her job had been eliminated.

Ms. Grooms subsequently contacted an attorney, and on January 13, 1987, Ms. Grooms' attorney[3] wrote to the South Carolina Human Affairs Commission ("SHAC"), stating in pertinent part, "I have a claim in age, and possibly sex, discrimination. I would appreciate receiving from you a form to file said claim in your office." The letter did not identify the alleged victim of discrimination nor the alleged discriminatory employer.

Ms. Grooms' attorney received no response, and so she again wrote to SHAC on March 16, 1987. The attorney stated in her letter, "... I told you that Gwendolyn Grooms had, in our opinion both a sex and age discrimination charge against Mobay.... To date I have not heard anything further from you. I want to provide you with whatever information you need in order for us to move forward with this case. Would you be so kind as to send me the necessary claim forms so that Mrs. Grooms can fill them appropriately? ..." This letter did identify the alleged victim of discrimination and the alleged discriminatory employer.

On April 13, 1987, SHAC forwarded the official Intake Questionnaires to Ms. Grooms' attorney, per her request. On May 26, 1987, Ms. Grooms filed what she termed a "more specific complaint" with SHAC. On October 5, 1987, SHAC officially filed Ms. Grooms' charge.[4] On October 29, 1987 SHAC trans-

1. In 1979, Ms. Grooms balked at training on the new spectro equipment. In 1983, while rotating assignments, Ms. Grooms requested that she be placed in one specific area, rather than being "shuffled all around." She then brought in a note from her physician, which stated that her migraine headaches were, at least in part, attributable to work-related stress. At this point, over the objection of Mr. Palazzolo, the Personnel Department permitted Ms. Grooms to be assigned to a permanent position, weighing samples in the weighing room.

2. Plaintiff initially named Dr. Hoguet as a defendant in this action, alleging that he intentionally interfered with her contract. Plaintiff has since dropped her claim against Dr. Hoguet.

3. The attorney who represented Ms. Grooms prior to the filing of this lawsuit is not the attorney now representing Ms. Grooms.

4. In a December 1, 1987 letter to Ms. Grooms, agency representative Gist offered an explanation as to why the April 13, 1987 filing was not "officially" filed until October 5, 1987. Gist stated, "due to circumstances (staffing and funding)

mitted Ms. Grooms' charge to the Equal Employment Opportunity Commission (the "EEOC"), and on November 2, 1987, Ms. Grooms' charge was served upon Mobay. On August 31, 1988, Ms. Grooms filed the instant action.

## ANALYSIS

On January 15, 1991, Mobay filed a motion for summary judgment as to all causes of action alleged against it by Ms. Grooms, arguing that there are no genuine issues as to any material facts and that Mobay is entitled to judgment as a matter of law. On January 30, 1991, Ms. Grooms filed a motion for summary judgment as to her breach of employment contract claim.

Summary judgment is only proper if no genuine issue of material fact exists. Federal Rule of Civil Procedure 56(c). In evaluating a motion for summary judgment, this Court must view the record in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–124 (4th Cir.1990). The moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986).

At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Under this standard, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–248, 106 S.Ct. at 2509–2510 (emphasis in original).

Where the moving party has made a properly supported motion for summary judgment, it is incumbent upon the nonmoving party to come forward with specific facts to show that there is a genuine issue of material fact for trial. *Id.* at 248, 106 S.Ct. at 2510. Once the moving party has carried its burden of establishing the absence of genuine issues of material fact, the nonmoving party "may not rest upon mere allegations or denials" of its pleading, Fed.R.Civ.P. 56(e), but must produce sufficient evidence to reasonably support a jury verdict in its favor. *Id.* at 249, 106 S.Ct. at 2510. Thus, if the nonmovant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Id.* at 249–250, 106 S.Ct. at 2510–2511.

### A. THE ADEA CLAIM

#### 1. Statute of Limitations

Turning to the merits of this case, Mobay argues that it is entitled to summary judgment as to Grooms' ADEA claim because her discrimination charge was not timely filed with the EEOC, as is required by 29 U.S.C. section 626(d). Section 626(d) of the ADEA states:

> No civil action may be commenced by an individual under this Section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed—
>
> (1) Within 180 days after the alleged unlawful practice occurred; or
>
> (2) In a case to which section 633(b) of this title applies [a deferral state], within 300 days after the alleged unlawful practice occurred or within 30 days after receipt by the individual of notice of termination of proceedings under state law, whichever is earlier.

A deferral state is, within the meaning of the ADEA, a state which has its own antidiscrimination legislation and enforcement mechanism. South Carolina is such a state. The state agency SHAC was formed in order to combat discrimination in employment and, pursuant to S.C.Code Ann. section 1–13–10 *et seq.*, it is empowered to do so. Section 1–13–

---

for which the Complainant nor her attorney were responsible, the paperwork was not completed for notice to be served upon you within the 180 day or 300 day period. In the past three years, this Agency's workload has increased tremendously while funding levels have decreased. This has resulted in some charges not being perfected as expeditiously as we would like."

90(a) requires that all charges be filed with SHAC within 180 days after the alleged discriminatory practice occurs.

■ In a deferral state, a person wishing to bring a federal ADEA claim against an employer must first file a charge with the appropriate state agency (in this case, SHAC), pursuant to the agency's filing requirements, *and* file a charge with the EEOC within 300 days of the alleged unlawful practice.[5] Where a complainant fails to file a timely state grievance but succeeds in filing a timely EEOC charge, the complainant will not be barred from filing an ADEA complaint against the employer, so long as the other requirements of section 626 are met.[6] *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 759, 99 S.Ct. 2066, 2073, 60 L.Ed.2d 609 (1979). Therefore, in order for Ms. Grooms to show that she filed a timely charge, she must demonstrate that an adequate discrimination charge was filed with both SHAC and the EEOC no more than 300 days after September 2, 1986, the date of her termination. Pursuant to *Evans,* Ms. Grooms need not show that her charge was filed with SHAC within 180 days of September 2, 1987.

■ In order to determine whether Ms. Grooms can prevail on her ADEA claim, the Court must first determine which, if any, of the documents Ms. Grooms sent to SHAC constitute an adequate age discrimination charge. The charge requirement is satisfied by the filing of a written statement identifying the potential defendant and generally describing the allegedly discriminatory action. H.Conf.Rep. No. 95–950, 95th Cong., 2d Sess. (1978) reprinted in 1978 U.S.Code Cong. & Ad.News 528, 534. The basic purpose of a charge is to provide the EEOC with sufficient information so that it may notify prospective defendants and attempt to eliminate the alleged unlawful practices through informal methods of conciliation. *Greene v. Whirlpool Corp.,* 708 F.2d 128, 130 (4th Cir.

1983), *cert. den'd,* 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 171 (1984). Ms. Grooms argues that both the January and March letters by her attorney to SHAC and the May 26 filing adequately state a charge.

■ The Court finds that the March 16, 1987 letter to SHAC constitutes a charge. The letter identifies the complainant, the alleged discriminatory employer and the type of discrimination alleged. Thus, it was sufficient to put Mobay on notice that it was being accused of discriminating against Ms. Grooms on the basis of age.

■ The Court must next determine whether Ms. Grooms' filing with SHAC also constituted a timely filing with the EEOC. The parties do not dispute that Ms. Grooms did not file a charge with the EEOC and that SHAC filed Ms. Grooms' charge with the EEOC more than 300 days after the alleged discrimination occurred.

Ms. Grooms argues that the charge filed with SHAC constitutes a timely filing with the EEOC, because, she asserts, compliance with SHAC's requirements for filing an age discrimination complaint constitutes compliance with the filing requirements of the ADEA. Grooms asserts, in essence, that by filing with SHAC, her charge is automatically considered to be simultaneously filed with the EEOC.

Ms. Grooms' argument enjoys limited support. Section 1626.10(c) of the EEOC's ADEA Procedural Regulations, 29 C.F.R. 1626.10(c) states:

when a worksharing agreement with a State agency is in effect, the state agency will act on certain charges and the Commission will promptly process charges which the State agency does not pursue. Charges received by one agency under the agreement shall be deemed received by the other agency for purposes of 1626.7.

---

5. In non-deferral states, a person wishing to bring an ADEA action in federal court against an employer must first file a charge with the EEOC, within 180 days after the alleged discriminatory practice occurs.

6. For example, if a S.C. resident files a complaint with SHAC 190 days after the alleged unlawful

practice occurs, files a complaint with the EEOC 220 days after the alleged unlawful practice occurs, and then files a timely ADEA claim in federal court, the complaint will not be dismissed for failure to timely file the complaint with SHAC.

In *McConnell v. General Tel. Co.*, 814 F.2d 1311, 1316 (9th Cir.1987), *cert. den'd, General Tel. Co. v. Addy*, 484 U.S. 1059, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1988), the Ninth Circuit embraced 29 C.F.R. section 1626.10(c), holding that when a workshare agreement exists, the regulation regarding simultaneous filing will be enforced.[7] *But see Grudowski v. Butler Paper Co.*, 670 F.Supp. 242, 246–247 (N.D.Ind.1987) (where the court found the regulation to be in conflict with the express provisions of the ADEA, which specifically requires that before a complainant files suit in federal court, she must file a timely complaint with the EEOC).

■■■ support of its holding, the *McConnell* court stated that use of the regulation avoids the unnecessary burden and duplication of filing separate claims with both the state and federal agencies and encourages reliance upon worksharing agreements, thus resulting in a reduction of the strain placed upon these agencies to meet the overwhelming demands for investigations. *McConnell* at 1316. Furthermore, "the ADEA is humanitarian legislation that should not be construed in a hypertechnical manner." *Stearns v. Consolidated Management, Inc.*, 747 F.2d 1105, 1112 (7th Cir.1984).

This Court agrees with the *McConnell* and *Stearns* courts. The ADEA requires potential litigants to forge through a complicated legal quagmire and jump through seemingly endless hoops before filing suit in federal court. It was certainly not Congress' intent that these complex technical rules operate so as to preclude litigants from pursuing discrimination claims. For these reasons, this Court finds that Ms. Grooms' filing with SHAC constituted a filing with the EEOC. Because her charge was filed with SHAC less than 300 days from the date the alleged discriminatory act occurred, it is deemed timely filed with the EEOC. Accordingly, defendant's motion for summary judgment is denied as to the timely filing of Ms. Grooms EEOC charge.

7. For purposes of Mobay's motion for summary judgment, this Court will assume that a workshare agreement exists between South Carolina and the EEOC. Given this assumption, it is sufficient for Ms. Grooms to show that her

**2. Evidence of Age Discrimination**

Mobay next argues that it is entitled to summary judgment as to Ms. Grooms' ADEA claim because the evidence in this case is insufficient to show that age was a factor in Mobay's decision to terminate Ms. Grooms. "Two paths are open to a plaintiff alleging age discrimination under the ADEA. First, a plaintiff can meet the burden under ordinary principles of proof by any direct or indirect evidence relevant to and sufficiently probative of the issue." *EEOC v. Western Electric Co., Inc.*, 713 F.2d 1011, 1014 (4th Cir.1983).

■ However, because "it is difficult to prove discriminatory intent under ordinary principles of proof," *Goldberg v. B. Green and Co., Inc.*, 836 F.2d 845, 849 (4th Cir. 1988), a plaintiff can use the judicially created proof scheme which was established under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) for Title VII cases. *See Herold v. Hajorca Corp.*, 864 F.2d 317, 319 (4th Cir.1988), *cert. den'd*, 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989). By choosing that path, the plaintiff first has the initial burden of offering adequate evidence to raise the inference that the employment decision was based on discriminatory criteria.

■ The plaintiff may prove her *prima facie* case of discriminatory discharge in a reduction in force case by showing: (1) that she was a member of a protected group; (2) that she was discharged; (3) that she was qualified to do her job; and (4) that age was a factor in her discharge. *Western Elec. Co.* at 1014.

■ Recently, in *Duke v. Uniroyal, Inc.*, 928 F.2d 1413 (4th Cir.1991), the Fourth Circuit "reconsidered the *Western Electric/Herold* analysis for situations 'where legitimate business reasons led to a reduction of employees in an identified group or territory and the stated criterion for selection was employee performance....'" *Gries v.*

charge was filed with SHAC and the EEOC within 300 days of the date her claim arose. She need not show that she filed a charge with SHAC within 180 days of that date, as is otherwise required.

*Zimmer, Inc.,* No. 90–2430, slip op. at 7, 1991 WL 137243 (4th Cir. July 29, 1991) (per curiam), *quoting Duke* at 1418. To prove a *prima facie* case in such cases, the plaintiff must establish that (1) she was protected by the ADEA; (2) she was selected from the group or territory for termination; (3) she was performing at a level substantially equivalent to the lowest level of those retained in the group or territory; and (4) the process of selection produced a residual work force of persons in the group or territory containing some unprotected persons who were performing at a lower level than that at which the plaintiff was performing. *Duke* at 1418.

 If the plaintiff meets her burden, the defendant employer must articulate some legitimate and non-discriminatory reason for its actions. If the defendant does so, the burden falls again upon the plaintiff to prove that she was the victim of intentional discrimination. This burden can be met by showing that the defendant's proffered reason is merely a pretext, and that the plaintiff's age is the more likely reason for the discharge. *Air Line Pilots Ass'n v. Trans World Airlines, Inc.,* 713 F.2d 940 (2d Cir. 1983), *aff'd in part, rev'd in part* on other grounds, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985); *Herold* at 317.

 Mobay does not dispute that Grooms has sufficient evidence to satisfy her *prima facie* case. However, Mobay argues that it has articulated a legitimate reason for selecting others instead of Ms. Grooms for retention in the reorganized labs, and that Ms. Grooms has no evidence which would tend to create a genuine issue of fact as to discriminatory intent or the existence of pretext in Mobay's proffered explanation.

Mobay asserts that it chose to terminate Ms. Grooms as part of its reduction in force because she had demonstrated an inability or unwillingness to be flexible in job assignments—a crucial requirement following consolidation of the laboratories, according to Mobay. Mobay argues that this constitutes a legitimate business reason for terminating Ms. Grooms.

 Ms. Grooms counters that the justifications articulated by Mobay for terminating her—the need for a reduction in force to cut back costs and Ms. Grooms' lack of flexibility—are merely a pretext for discrimination. First, Ms. Grooms attempts to show pretext by showing that Mobay did not need to reduce its workforce in order to remain competitive and profitable. In support, Ms. Grooms embarks upon a long dissertation regarding Mobay's profitability. This Court is nonplussed by this argument. Whether or not it was necessary for Mobay to reduce its force to remain profitable is not our concern in an age discrimination case. Only if plaintiff were to argue that Mobay underwent a major reorganization simply to rid itself of an aging employee or if plaintiff were to argue that this is a disparate impact case rather than a disparate treatment case, would the Court entertain this argument.[8] However, in the absence of such arguments, it is not for this Court to comment upon the business decisions of a corporation but only to determine whether that corporation discriminated against the plaintiff.

Ms. Grooms next argues that she was sufficiently cross-trained and experienced in all sections of the quality assurance laboratory, that her permanent assignment to the weighing room was with the knowledge and consent of management, and that therefore, Mobay's termination for inflexibility was pretextual. In concentrating on her training experience, Ms. Grooms misunderstands Mobay's argument. Mobay does not assert that it terminated Ms. Grooms for lack of experience or training, but for her inflexible attitude about rotating assignments. Ms. Grooms at no point contests Mobay's assertion that she preferred to maintain a permanent position, instead of rotating. Ms. Grooms' only response to Mobay's assertion that she was inflexible is that she was never warned that a lack of desire to rotate would be detrimental to her career.

Ms. Grooms' assertions fall far short of showing pretext. Mobay's rationale that

---

**8.** The disparate impact doctrine entails a showing that facially neutral employment practices fall more heavily on individuals in a protected group and cannot be justified by business necessity. Ms. Grooms has not alleged that this is a case of disparate impact.

with its reduced force it preferred to employ technicians willing to work in several different areas of the lab is sound. Regardless of whether Ms. Grooms was capable of working in the various areas, it is certainly understandable that Mobay would be hesitant to employ Ms. Grooms in this area given her prior history of unwillingness to rotate.

Finally, Ms. Grooms points to a chart kept by Dr. Hoguet on the Bushy Park employees as possible evidence of discrimination. Ms. Grooms cites as significant the fact that the first column on the chart after the employee's name was the employee's age. Other columns included date of hire, job grade, brief comments on overall performance, and numerical scores on such criteria as creativity and consistency. This solitary reference to age, in the absence of other evidence suggesting pretext, is insufficient to show that Mobay discriminated against Ms. Grooms on the basis of age.

Mobay has met its burden of articulating adequate business justifications for terminating Ms. Grooms. Ms. Grooms, on the other hand, has failed to offer evidence that Mobay's articulated justifications are merely pretext. Therefore, the Court finds that there is no genuine issue of material fact as to whether Mobay discriminated against Ms. Grooms on the basis of age when it terminated her as part of a reduction in its workforce. Accordingly, it finds that summary judgment should be granted in favor of Mobay as to the ADEA claim.

## B. *BREACH OF CONTRACT*

Ms. Grooms and Mobay both seek summary judgment as to Ms. Grooms' breach of employment contract claim. Pursuant to *Small v. Springs Ind., Inc.,* 292 S.C. 481, 357 S.E.2d 452 (1987), Ms. Grooms argues that her relationship with Mobay was not an at-will relationship, but one governed by contract. She asserts that Mobay violated the following contractual provisions: (1) that her employment would continue until she became eligible for certain retirement benefits, unless good cause existed for termination; (2) that Mobay would avoid reductions in force whenever possible; (3) that should it not be possible to avoid a reduction in force, any

such reduction would be arranged with fairness for Ms. Grooms; and (4) that Ms. Grooms would not be penalized in any way, or considered a higher priority for termination of her employment for failure to have performed any particular job function or to have received any particular training. Ms. Grooms asserts that her contractual relationship with Mobay arises out of Mobay's personnel administration policy manual. The manual states, in pertinent part:

> *Reductions in Force.* The Corporation has and will continue to avoid reductions in force whenever possible. However, it is recognized that it is not always possible to avoid reductions in force in response to changing business conditions. Should reductions in force become necessary, whether temporary (layoffs) or permanent force reductions (terminations), they will be arranged with fairness and consideration for all employees and the Company's need to effectively operate the business. . . .

Mobay argues that the manual did not constitute a binding employment contract and therefore Ms. Grooms remained an at-will employee. In *Small,* the South Carolina Supreme Court recognized that the traditional at-will employment relationship may be altered where the employer issues a handbook. Under certain circumstances, the handbook may create a limiting agreement on the employee's at-will employment status. *Id.* at 455. In order to ascertain whether a valid breach of employment contract claim existed in this case, this Court must first determine whether the manual constitutes a contract within the meaning of *Small.* For the following reasons, the Court finds that Mobay's manual did not create a binding contract of employment.

The Court finds that the policy language at issue here is too vague and unspecific to constitute an enforceable contract which would limit Mobay's right to discharge an otherwise at-will employee, nor is the manual written in mandatory terms, as is required by *Small. See id.* at 455. *See also Ellis v. El Paso Natural Gas Co.,* 754 F.2d 884 (10th Cir.1985).

In support of this finding, the Court adopts the unreported decisions of United States District Judges Clyde H. Hamilton and Charles E. Simons, Jr., both of the District of South Carolina. *See Wadford v. Hartford Fire Ins. Co.,* No. 3:87–2872–15, at 17 (D.S.C. August 11, 1988) (where the court held that statements in a personnel handbook which promise general fairness and consistency in treatment are too indefinite to constitute a contract limiting the employer's right to discharge an at-will employee) and *Tyler v. Roper Corp.,* No. 5:86–2544–6, at 10 (D.S.C. August 31, 1987) (where the court held that under *Small,* it must be established that the employee handbook contains assurances which are expressed in mandatory terms in order to find that a handbook alters the at-will relationship).

Because Mobay's manual does not create a binding contract, Ms. Grooms' breach of employment contract claim must fail. Accordingly, summary judgment is granted in favor of defendant as to the contract claim.

## C. THE VIOLATION OF PUBLIC POLICY CLAIM

Ms. Grooms alleges that by discriminating against her and by breaching an employment contract, Mobay violated public policy. Mobay also seeks summary judgment as to this cause of action. Mobay argues first, that the public policy violation can be applied only where an employee is discharged for refusing to perform an act which would constitute a violation of a penal or criminal statute; second, that it would contravene the SHAC legislation to find a public policy violation on the basis of discrimination, since section 1–13–100 states "nothing in this chapter shall be construed to create any cause of action other than those specifically described in section 1–13–90 of this chapter;" and third, that to find a public policy violation based on a breach of contract would be to create a tort cause of action for every breach of employment contract.

This Court need not address whether a plaintiff states a valid cause of action for violation of public policy where the plaintiff is the victim of discrimination or breach of contract. The court has already held that Mo-bay did not discriminate against Ms. Grooms, nor enter into an enforceable employment contract, and so Mobay could not have violated any public policy for the reasons asserted by Ms. Grooms. Accordingly, defendant's motion for summary judgment as to plaintiff's public policy claim is granted.

## D. IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM

■ Ms. Grooms alleges that defendant's acts and practices constitute a violation of an implied covenant of good faith and fair dealing. Mobay argues that no such cause of action exists where a person is employed at-will. This Court agrees. In *Satterfield v. Lockheed Missiles & Space Co.,* 617 F.Supp. 1359, 1364 (D.S.C.1985) the court stated:

[P]laintiff's employment was at will, a relationship in which the law accords the employer an unfettered right to terminate the employment at any time. In the context of such an employment it would be incongruous to say that an inference may be drawn that the employer impliedly agreed to a provision which would be destructive of his right of termination. The parties may by express agreement limit or restrict the employer's right of discharge, but to imply such a limitation from the existence of an unrestricted right would be internally inconsistent.

*Satterfield* at 1364.

Although the South Carolina Supreme Court has not spoken on this issue directly, it has continued to enforce the at-will doctrine. This Court is not at liberty to adopt a cause of action which would be in conflict with that doctrine. Therefore, this Court adheres to the ruling of *Satterfield* and, having already found that Ms. Grooms' employment with Mobay was at-will, grants summary judgment in favor of defendant as to this cause of action.

## E. PROMISSORY ESTOPPEL

Finally, Ms. Grooms alleges that Mobay wilfully violated several express and implied promises it made to the plaintiff. The promises cited by plaintiff are essentially the promises she contends Mobay made under her contract claim. Mobay argues that sum-

mary judgment should also be granted as to this cause of action.

Promissory estoppel "may arise from the making of a promise, even though without consideration, if it was intended that the promise should be relied upon and in fact it was relied upon, and if a refusal to enforce it would be virtually to sanction the perpetration of fraud or would result in other injustice." *Higgins Constr. Co. v. Southern Bell,* 276 S.C. 663, 281 S.E.2d 469, 470 (1981). Under a promissory estoppel theory, the promise must be "unambiguous in its terms" to be enforceable. *Powers Constr. Co. v. Salem Carpets, Inc.,* 283 S.C. 302, 322 S.E.2d 30, 33 (1984).

Having found that the Mobay policy manual was unspecific, vague and indefinite, this Court finds that Mobay made no unambiguous promise to Ms. Grooms regarding employment as is required for a valid promissory estoppel claim. Accordingly, summary judgment is granted in favor of defendant as to this cause of action. It is, therefore,

**ORDERED** that summary judgment be granted in favor of defendant Mobay as to all causes of action alleged against it by plaintiff Ms. Grooms.

**IT IS SO ORDERED.**