Martha BROWN, Plaintiff,

v.

**BERKELEY COUNTY SCHOOL DISTRICT, Defendant.**

No. C/A 2:03–1097–18.

United States District Court, D. South Carolina, Charleston Division.

Oct. 6, 2004.

716

Chalmers Carey Johnson, Chalmers Johnson Law Firm, Charleston, SC, for plaintiff.

Kenneth Lendrem Childs, Kathryn Long Mahoney, Thomas Kennedy Barlow, Childs and Halligan, Columbia, SC, for defendant.

## ORDER

NORTON, District Judge.

### I. Background

On April 7, 2003, plaintiff Martha M. Brown ("Brown" or plaintiff) filed a complaint in this court against defendant Berkeley County School District ("BCSD" or defendant) alleging 1) "wrongful failure to hire in violation of Title VII of the Civil Right [sic] Act of 1964, as amended, 42 U.S.C.1981a, and 29 U.S.C. 621, the ADEA;" 2) "wrongful termination / failure to hire; retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C.1981a;" and 3) promissory estoppel (the "Complaint"). (Pl.'s Compl.

at ¶¶ 30–58.) On March 15, 2004, defendant filed a motion for summary judgment as to all three of plaintiff's causes of action. Plaintiff responded on April 2, 2004, and conceded that her claims of age and race discrimination (her first cause of action and presumably the aspects of her second cause of action that relate to her termination) could not survive summary judgment as the record stands. (Pl.'s Response to Def.'s Mot. for Summ. J. at 14–15.) On May 27, 2004, United States Magistrate Judge Robert S. Carr issued a Report and Recommendation (the "Report") in which he recommended granting defendant summary judgment as to all of plaintiff's remaining claims. (R. & R. at 21.) On June 14, 2004, plaintiff objected to virtually every aspect of the magistrate judge's Report on the remaining claims, and this court held a hearing regarding those objections on August 16, 2004. As a result of issues raised at the hearing, the parties were allowed to submit supplemental briefing. The parties having now been fully heard on the matters at issue, the court rules as follows.

## II. Standard of review

This court is charged with conducting a *de novo* review of any portion of the magistrate judge's Report and Recommendation to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendation contained in that report. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). This court is not required to review under a *de novo* standard, or any other standard, the factual findings and legal conclusions of the magistrate judge to which the parties have not objected. *Id.* at 149–50, 106 S.Ct. 466. General objections will not suffice to obtain judicial

review of a magistrate judge's findings. *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505, 508–09 (6th Cir.1991).

Summary judgment is proper only when there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). The moving party has the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir.1984). Material facts are those that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is only genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* This burden may be met through the use of depositions, sworn affidavits, and other discovery materials. *Barwick,* 736 F.2d at 958. Consequently, in evaluating a motion for summary judgment, the court views the record in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 123–124 (4th Cir.1990). Once the moving party makes the necessary showing, however, the nonmoving party must go forward and produce evidentiary facts to support its contentions. *Barwick,* 736 F.2d at 958–959. A "mere scintilla" of evidence is not enough to create a fact issue; there must be evidence on which a reasonable jury might rely. *Id.* In other words, the nonmoving party cannot create a genuine issue of material fact through "mere speculation or the building of one inference upon another." *Id.* at 963.

## III. Facts

The following facts have been cut down significantly to focus on the facts related to plaintiff's remaining cause of action: retaliation. All facts and inferences are taken in a light most favorable to plaintiff.

Plaintiff worked for defendant as a secretary for over thirty years. Toward the end of her employment with defendant, plaintiff worked under a supervisor named Carolyn Price ("Price"). Price often asked plaintiff when she was going to retire and encouraged her to do so. In the midst of these exchanges, plaintiff learned of a program that would allow her to "retire" and continue to work in her same position, thereby entitling plaintiff to retirement benefits and her normal salary, or at least a substantial portion thereof. Plaintiff attempted to talk to Price about the program, but claims that Price would never meet with her to discuss it. Accordingly, plaintiff approached Willis Sanders ("Sanders"), the Assistant Superintendent for Personnel, about the program, and he referred her to Dr. J. Chester Floyd ("Floyd"), the Superintendent.

Plaintiff explained to Floyd that she did not want to retire under the program if she could not continue to work and expressed her concern that Price would "make her leave" if she retired. Floyd told plaintiff that she would have a place in the district if she took advantage of the program and that Price would not be able to make her leave without significant documentation detailing reasons for such a change. Plaintiff decided to take advantage of the program and informed Price of her intention to do so by copying Price on a letter she sent to Floyd thanking him for the help. Plaintiff claims that Price was visibly upset by the letter because she realized plaintiff would be retiring but not leaving her position. Plaintiff alleges that Price then began putting negative memos in plaintiff's file and eventually gave plaintiff "her first negative evaluation in thirty years" in June of 2000.

In January of 2001, Dr. Michael Miller Turner ("Turner"), the Deputy Superintendent for Instructional Services, informed plaintiff that he was supporting Price's decision to not recommend plaintiff for re-hire in the 2001–2002 school year. Plaintiff then began applying for other positions throughout the district, but was not selected for any of them based on, according to defendant, more qualified applicants getting the position each time.

On May 1, 2001, Turner sent plaintiff a letter explaining that her position was being eliminated. Turner also advised plaintiff that there had been performance concerns with her work and that these concerns, together with the elimination of her position prevented defendant from guaranteeing her employment in another position in the district. Turner did inform plaintiff that she was free to apply for any open positions in the district for which she was qualified. On July 31, 2001, plaintiff filled out an Initial Inquiry Questionnaire (the "Initial Questionnaire") for the South Carolina Human Affairs Commission ("SHAC") alleging that she had been discriminated against by Price on the basis of her race and age by being discharged from employment. The Initial Questionnaire states at the top, in bold letters, that "Completion of this form does not constitute the filing of a charge." The Initial Questionnaire also has an option to circle for retaliation, along with an explanation of what that entails. Plaintiff did not circle the option.

In August of 2001, plaintiff began working as a substitute administrative assistant for the principal of Whitesville Elementary School in BCSD, Luretha Sumpter ("Sumpter"). As Sumpter interviewed full-time replacements, she began to talk with plaintiff about filling the position permanently. Some time shortly after that, Sanders came by to see Sumpter. After the meeting, Sumpter told plaintiff that "the District office" was not happy about plaintiff working at Whitesville and was

pressuring Sumpter not to hire plaintiff because "according to the District office," plaintiff "was engaged in litigation against the district." Plaintiff then told Sumpter about the questionnaire she had filled out with SHAC. A few days later, Sumpter told plaintiff that "the District office had told Sumpter that her (Sumpter's) job might be in jeopardy if she hired [plaintiff]." Sumpter then told plaintiff that she could not hire her to fill the job full-time.

On September 7, 2001, plaintiff filled out a Charging Party Discharge Questionnaire (the "Second Questionnaire"), wherein she attached a narrative generally describing the Whitesville Elementary School incident laid out above, but she did not mention in that narrative anything about the "District office" telling Sumpter not to hire plaintiff because she had complained about discrimination. Plaintiff only wrote that "The District Office Administrators were giving [Sumpter] a hard time regarding [her decision to hire plaintiff]." Plaintiff never used the word retaliation.

On October 24, 2001, plaintiff filed a Charge of age discrimination with SHAC (the "Charge"). The form was filled out by a SHAC employee at plaintiff's instruction, and plaintiff reviewed and signed the Charge. It does not mention, nor is the available box checked for, retaliation. After a full investigation, SHAC dismissed plaintiff's Charge with a finding of no reasonable cause that defendant had discriminated against plaintiff. Plaintiff then filed the instant suit.

### IV. Analysis

As indicated, Magistrate Judge Carr recommended granting defendant summary judgment as to all of plaintiff's remaining claims (beyond the already conceded discrimination claims), and while plaintiff adamantly objected to almost everything in the Report, she did not contest the magistrate judge's recommendation to dismiss her claim for promissory estoppel. Plaintiff's failure to specifically object waives any objection she might have made; therefore, the court will grant defendant summary judgment as to plaintiff's promissory estoppel claim. The remaining claim, the one for retaliation, and plaintiff's accompanying objection are more complicated.

### The magistrate judge's R & R

The magistrate judge recommended granting defendant's motion for summary judgment with regard to plaintiff's retaliation claim on a few different grounds: 1) plaintiff appeared to have abandoned her claim under 42 U.S.C. § 1981a; 2) plaintiff failed to exhaust administrative remedies prior to filing suit; and 3) plaintiff has no evidence to rebut defendant's proffered non-discriminatory reason for the employment action. Plaintiff objects to each of the magistrate judge's findings and conclusions.

### i. Plaintiff's claim under 42 U.S.C. § 1981a

On the first page of the magistrate judge's Report, he included a footnote that reads, in pertinent part: "Plaintiff also pled a cause of action under 42 U.S.C. § 1981 but it appears she has abandoned the claim along with her other race claim." (R & R at 1 n. 1.) Plaintiff objected to the magistrate judge's conclusion by citing the portion of her brief that reads "In order to established [sic] a claim for retaliation under Title VII; and under 42 U.S.C.1981a, the Plaintiff must point to facts which..." and then commenting that she cannot understand how anyone that read that portion of her brief could believe that she had abandoned her claim under § 1981a. (Pl.'s Objs. to R & R at 2.) She went on to state that claims brought under § 1981a "do[] not require the exhaustion of administrative remedies, [therefore] the arguments

concerning exhaustion of administrative remedies would not apply to this cause of action." (Pl.'s Objs. to R & R at 2.) Defendant responded that § 1981a does not confer any substantive rights but merely provides additional remedies for intentional employment discrimination. In other words, § 1981a is still subject to the strictures of Title VII and all administrative remedies must be exhausted before relief can be had under § 1981a.

■■■ Plaintiff was unable to cite any case law to support her proposition that § 1981a does not require the exhaustion of administrative remedies. Defendant, on the other hand cited numerous cases that have held § 1981a only to be an additional remedy available in Title VII cases where intentional discrimination is alleged and proved. *See Powers v. Pinkerton, Inc.*, 28 F.Supp.2d 463, 472 (N.D.Ohio 1997) (citing *Swartzbaugh v. State Farm Ins.*, 924 F.Supp. 932 (E.D.Mo.1995) and *Ferry v. Roosevelt Bank*, 883 F.Supp. 435 (E.D.Mo. 1995)), *West v. Boeing Co.*, 843 F.Supp. 670, 675 (D.Kan.1994) ("Section 1981A merely clarifies and adds to the damages available to a plaintiff who shows, under Title VII, that she was the victim of intentional discrimination in employment. It does not, either expressly or impliedly, create an additional cause of action for employment discrimination plaintiffs."); *see also, Perry v. Dallas Indep. Sch. Dist.*, 1998 WL 614668, *1 n. 1 (N.D.Tex.1998) (unpublished opinion) ("There is no such thing [as a § 1981a claim]"). As such, plaintiff's contention that she did not in-

tend to concede her § 1981a "claim" is irrelevant because in whatever form § 1981a exists for plaintiff's benefit, it only survives on life support provided by her Title VII claim. In other words, plaintiff's § 1981a claim rises and falls with her Title VII claim and is thus subject to the requirement that she exhaust all administrative remedies before filing it.

■■■ Additionally, in plaintiff's supplemental brief filed with this court on September 1, 2004, she refers to her claim for the first time as a § 1981 claim rather than a § 1981a claim. A claim under § 1981 is a distinct issue and not one to be raised at this stage in the litigation process. Plaintiff has discussed this claim numerous times in her Complaint and briefs and has consistently referred to it as a § 1981a claim and argued about that statute's viability as a stand-alone remedy at oral argument. As such, it is clear that plaintiff's previous reliance on § 1981a as providing a separate remedy is not one in the nature of a typographical error. Plaintiff has not navigated the proper channels for amending her complaint, and the court will not consider a § 1981 claim raised at this stage in the litigation.

### ii. Exhaustion of administrative remedies

■■■ Plaintiff next objects to the magistrate judge's finding that her "retaliation claim must be dismissed because she has failed to exhaust her administrative remedies."[1] (R & R at 16.) Plaintiff's retaliation claim stems from her allegation that

---

1. Plaintiff also objects to the magistrate judge characterizing her argument as one for retaliation under ADEA rather than one for retaliation under Title VII and § 1981a. (Pl.'s Objs. to R & R at 3.) Plaintiff's Complaint characterizes her cause of action as one for retaliation under Title VII and § 1981a, (Compl. at ¶¶ 41–46); therefore, that is how the court analyzed it below. In spite of the magistrate judge characterizing plaintiff's claim as one of retaliation under ADEA, however, he analyzed it as one under Title VII, so it would seem that no harm befell plaintiff because of this inconsistency. (R & R at 13–17.) It is possible that the magistrate judge approached it as an ADEA claim because that is the only claim raised on the face of plaintiff's SHAC Charge.

Sumpter wanted to hire her for the Whitesville Elementary School job, and indeed would have hired her, if "the District office" had not "pressured" Sumpter into hiring someone else because plaintiff had "started litigation against them." (Brown Aff. at 7.) The magistrate judge found that plaintiff's retaliation claim should have been included in her Charge that was filed with SHAC, and because it was not, plaintiff failed to exhaust her administrative remedies.[2] (R & R at 16.)

■ It has long been the law that "a claimant under Title VII must exhaust h[er] administrative remedies by raising h[er] claim before the EEOC." *Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 148 (4th Cir.1999) (citing *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir.1995) ("Where . . . claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.")).[3] In *Sloop*, the plaintiff filed a charge with the EEOC wherein she only checked the box next to "AGE" as a basis for her claim of discrimination. *Id.* at 149. The plaintiff nevertheless claimed that she had properly raised her Title VII retaliation claim with the EEOC because of a letter that she had written to the EEOC more than two months after her initial charge was filed stating, "I am now aware that I need to add a charge of retaliation to my complaint." *Id.* The Fourth Circuit rejected this letter as insufficient on several grounds. It said that the letter 1) still did not put the EEOC on notice of a Title VII retaliation claim (as opposed to an ADEA

**2.** Plaintiff also takes issue with the magistrate judge's finding as to what forms of protected activity plaintiff engaged in that could form the basis of her retaliation claim. The magistrate judge stated that, at oral argument, plaintiff identified two instances of protected activity: 1) plaintiff alleges that she asked Sanders, in June or July of 2001, if she was not being hired for open positions within the district because of her race and/or her age, and 2) in August of 2001, when Sumpter told plaintiff of pressure not to hire her from the District office, plaintiff told Sumpter that she had filed the Initial Questionnaire with SHAC. Plaintiff objects to the magistrate judge finding that she did not also mean to include actually completing the Initial Questionnaire in July of 2001 as one of her protected activities. This omission, if it did occur, did not prejudice plaintiff because the magistrate judge's main point was only that plaintiff should have included the retaliation claim in the Charge that was filed in October—all three of the alleged protected incidents occurred prior to the filing in October.

Incidentally, the magistrate judge also found that plaintiff never included the Initial Questionnaire in evidence. (R & R at 10–11.) Plaintiff dedicates three pages of her brief to rebutting this finding. (Pl.'s Objs. To R & R at 12–14.) Plaintiff had referred to the Initial Questionnaire as Exhibit 2 to plaintiff's affidavit when it was actually Exhibit 2 to Plaintiff's Response to Defendant's Motion for Summary Judgment. In the end, it is only relevant because the document alleged age and race discrimination, which is different from the Charge that alleges only age discrimination. Plaintiff wanted to make the point that all of her allegations were not included in the Charge, fortifying her contention that she told SHAC to include her retaliation claim, and they just did not do it. The court has considered the Initial Questionnaire just as it has considered all three of plaintiff's alleged protected activities.

**3.** Because neither party nor the magistrate judge addressed whether there was an actual claim to the Equal Employment Opportunity Commission (the "EEOC"), and all treated plaintiff's Charge with SHAC as the EEOC claim, it seems that the court can assume a situation similar to the one in *Grooms v. Mobay Chem. Corp.*, 861 F.Supp. 497, 503 (D.S.C.1991), wherein this court assumed a workshare agreement between South Carolina and the EEOC such that a filing with SHAC is sufficient for a filing with the EEOC. *Id.* at 503 n. 7 (referring to 29 C.F.R. § 1626.10(c) and *McConnell v. General Tel. Co.*, 814 F.2d 1311, 1316 (9th Cir.1987), for support).

retaliation claim), 2) that the plaintiff never followed up on the desire to amend her charge even though the letter clearly showed her belief that she needed to by stating "Please let me know what I need to do in order to do this," and 3)

> Even if [the plaintiff] had subjectively believed she had amended her charge by sending the letter, it would be objectively illogical to view a private letter from a complaining party to the EEOC as constructively amending a formal charge, given that one of the purposes of requiring a party to file charges with the EEOC is to put the charged party on notice of the claims raised against it.

*Id.* The court also noted that there was "nothing in the plaintiff's EEOC file to suggest that the EEOC actually investigated the claim, and [the plaintiff] can provide no rationale whereby the EEOC would naturally have considered a Title VII retaliation claim in the course of investigating a claim of age discrimination." *Id.* at n. 7.

The court finds the instant case analogous to *Sloop.* Just as in *Sloop,* plaintiff filed an agency charge wherein she only checked the box for age discrimination, and while plaintiff claims that the narrative she attached to the Second Questionnaire should have tipped the EEOC that it should investigate a retaliation claim, the language of the narrative itself seems too vague for such a conclusion—it only states that the "District office" was giving Sumpter a hard time about hiring plaintiff; it does not say that the District office was doing it in retaliation for protected activity, and it seems logical that the pressure just as easily could have been because of plaintiff's negative work evaluations. Furthermore, the plaintiff in *Sloop* wanted to amend her charge after she had made it; plaintiff in the instant case claims that she wanted the retaliation claim included in her charge from the time she filled out the

Second Questionnaire, which was prior to her reviewing and signing her actual Charge. In other words, plaintiff had the chance that the plaintiff in *Sloop* did not have—all plaintiff had to do was check the retaliation box on the actual Charge before signing it. Under the reasoning in *Sloop,* it seems that plaintiff has not exhausted her administrative remedies; therefore, her claim for retaliation must be dismissed.

Plaintiff's response to this reasoning is 1) that she disagrees with the characterization of the narrative in the Second Questionnaire and believes that it does show facts to support retaliation, 2) that she should not be responsible for reviewing the actual SHAC Charge because a SHAC employee filled it out and did not check the appropriate boxes, 3) that she told a SHAC employee over the phone to add a retaliation charge for her, and 4) that SHAC actually investigated the retaliation claim. The third and fourth contentions are the only ones with any merit. If there were any evidence that plaintiff actually told SHAC to and that SHAC actually did investigate her retaliation claim, then that could take plaintiff's case out of the ambit of *Sloop,* but plaintiff's affidavit is not evidence to support her arguments, leaving this court with only argument that such an exchange took place.

Plaintiff's argument is that she testified, in the form of her sworn affidavit, that she called SHAC and told them about her retaliation claim and that SHAC then investigated her claim by asking her questions about it; therefore, her affidavit creates, by itself, a material issue of fact as to whether SHAC investigated her retaliation claim and whether she exhausted her administrative remedies. The court disagrees that her affidavit says any such thing. The portion of plaintiff's affidavit

that she relies on for this entire argument reads:

> After [Sumpter told me she could not hire me], I called my S.C. Human Affairs Investigator and told her what had happened at Whitesville. I also sent the S.C. Human Affairs Commission a typed up letter including the retaliation part in Attachment # 1 (Exhibit 13) [what this Order refers to as the narrative]. I understood that the S.C. Human Affairs Commission was investigating that incident too, since they asked me questions about it and I wrote in a formal change to my complaint right in the beginning of the investigation.

(Brown Aff. at 6.)

It seems that plaintiff's affidavit shows that her phone call said the same thing that her narrative says—that Sumpter was being pressured not to hire her. While the affidavit refers to the Whitesville incident as the "retaliation part," her narrative definitely does not refer to it by that name, and there is nothing to suggest that her phone call did either. Furthermore, it does not seem that plaintiff's assertion that SHAC asked her questions about the "Whitesville incident" is enough to override the formal Charge and show that SHAC actually investigated plaintiff's Title VII retaliation claim. Without evidence to show that SHAC actually investigated plaintiff's retaliation claim, there is no evidence to show that the Charge reasonably should have led SHAC to investigate a Title VII retaliation claim, and plaintiff cannot show that she exhausted her administrative remedies. All plaintiff had to do if she believed she had a retaliation claim, as she suggests, from the time that she filled out her Second Questionnaire, was check the retaliation box before she sent in the SHAC Charge. Such an act would have put SHAC on notice of what it needed to investigate. Instead, plaintiff made no changes to a Charge that only states a claim for Age Discrimination. For those reasons, the court will grant defendant's motion for summary judgment.

## V. *Conclusion*

It is therefore,

**ORDERED**, for the foregoing reasons, that defendant's motion for summary judgment is **GRANTED** in its entirety.

**AND IT IS SO ORDERED.**