**Leonor Rosas CARDONA, Plaintiff,**

v.

**ARAMARK SERVICES OF PUERTO RICO, INC., et al, Defendants.**

No. CIV. 97–1756(HL).

United States District Court,
D. Puerto Rico.

June 22, 1998.

George Uzdavinis–Velez, Mayaguez, PR, for plaintiff.

Pedro J. Manzano–Yates, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Defendant ARA Service.

Luis A. Lopez–Lopez, Mayaguez, PR,. for Defendant Star Kist Caribe, Inc.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is a motion for summary judgment filed by Defendant Aramark Services of Puerto Rico, Inc. Aramark operates the cafeteria at a Star Kist plant in Mayagüez, Puerto Rico. Plaintiff Leonor Rosas Cardona ("Rosas") was an employee in the

cafeteria from 1989 until her termination in May 1992. Rosas alleges that she was subjected to sexual harassment while she worked for Aramark. She claims that she was terminated from her position in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), and in violation of Puerto Rico's Law 100, 29 L.P.R.A. §§ 146–151 (1995). Although it is unclear, it appears from her complaint that she may also be claiming damages under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141 (1991).

The Court reviews the record in the light most favorable to Rosas and draws all reasonable inferences in her favor. *See LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993). While the Court must afford Rosas this preferential review of the record, her opposition to Aramark's motion for summary judgment suffers from serious defects. First, she has not submitted any evidence to support her opposition. Second, her opposition does not contain a statement of contested material facts. When a party opposing a motion for summary judgment fails to submit a statement of contested material facts, the court must deem to be admitted the movant's properly supported statement of material facts. Local Rule 311(12); *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir.1996); *Dominguez v. Eli Lilly and Co.*, 958 F.Supp. 721, 727 (D.P.R.1997), *aff'd*, 141 F.3d 1149, 1998 WL 112515 (1st Cir.1998). Thus, the Court must balance the reasonable inference to which Rosas is entitled with Aramark's statement of properly supported material facts, which must be taken as true.

Rosas began working at Aramark as a cafeteria cashier in 1989.[1] Her supervisor at the time she started was Rafael Ramírez.[2] She claims that Ramírez was the perpetrator of the sexual harassment against her. She alleges the following conduct by him: in October 1989, Ramírez was giving her a ride home from work when, instead of taking her directly home, he told her that he was taking her to a motel. She protested vehemently, and he drove her to her house.[3] He made crude comments to the effect that her breasts could be used as pillows, that he had erotic dreams about her, and that the shape of her derrière indicated what sexual position she was using.[4] He would ask her what she did in the bathroom, and on one occasion he followed her into the bathroom.[5] In one incident which took place in 1991, while she was on break and standing in line to buy something to eat, Ramírez brushed his crotch against her backside in a suggestive manner.[6] Around May 1991, he showed her a crude drawing on a napkin.[7] Lastly, while Rosas was working the cash register, Ramírez would repeatedly stand close behind her and ignore Rosas' protestations that he was making her uncomfortable and requests that he move away.[8]

Rosas complained to Ramírez' supervisor, Rubén Sierra, that this conduct constituted harassment.[9] The first time she complained was in May 1991. Sierra confronted Ramírez with these accusations, who denied them. Sierra challenged this denial because he had seen Ramírez do some of the things that Rosas claimed he did.[10] After consulting with his supervisors, Sierra changed Rosas shift so that she would not be working at the same time that Ramírez was. Rosas did not object to this remedy.[11] On June 11, 1991, Rosas' shift was changed so that she would not have to work with Ramírez.[12]

Once her shift changed in June 1991, Rosas did not have any more contact with Ra-

1. Docket no. 15, exhibit 1.

2. Docket no. 20, exhibit 2, at 38.

3. Docket no. 20, exhibit 4, at 76–78.

4. Docket no. 20, exhibit 4, at 78–79.

5. Docket no. 20, exhibit 4, at 79–80.

6. Docket no. 20, exhibit 4, at 82–83, 87–88.

7. Docket no. 20, exhibit 4, at 87.

8. Docket no. 20, exhibit 4, at 84, 86.

9. Docket no. 20, exhibit 3, at 88–92; exhibit 4, at 83.

10. Docket no. 20, exhibit 3, at 90.

11. Docket no. 20, exhibit 3, at 90–92.

12. Docket no. 20, exhibit 2, at 41–43; exhibit 3, at 86.

mírez until May of the next year.[13] The record does not contain any other evidence of harassing conduct from the time Rosas' shift was changed on June 11, 1991, until May 20, 1992, the date of the final incident of which Rosas complains. On this latter date, Sierra changed Rosas to Ramírez' shift for one day so that she could cover for a co-worker who had to take a day off.[14] While on break, Rosas was standing by a register and waiting for a sandwich that she had ordered from a co-worker. Ramírez approached her and told her that she could not eat her sandwich there.[15] An argument between Ramírez and Rosas ensued over where and when she could eat her sandwich during her break. Rosas stated that Sierra let her eat sandwiches on break while she was next to the register; Ramírez said that Sierra could not deprive him of his authority.[16] The dispute culminated in Ramírez' telling Rosas to clock out and leave for the day. He called a security guard to have her escorted off the premises.[17]

The following day, Rosas met with Sierra to discuss the incident. He told her that Star Kist had instructed him to fire either Ramírez or Rosas; that he would be unable to find another supervisor to work as cheaply as Ramírez; and that therefore he was firing her.[18] On May 29, 1992, Rosas filed a complaint with the Anti–Discrimination Unit of the Puerto Rico Department of Labor and Human Resources ("ADU"). In her complaint she recounted some of the harassing conduct that took place before her shift was changed. She also stated that on May 20, 1992, Ramírez had fired her without justification.[19]

In its motion for summary judgment, Aramark argues that Rosas' claim is timebarred because her administrative complaint was filed more than 300 days after the last alleged incident of harassing conduct by Ramírez. Rosas has opposed the motion. For the reasons set forth below, the Court grants Aramark's motion for summary judgment.

## DISCUSSION

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed. R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has satisfied this requirement, the non-moving party has the burden of presenting any facts that demonstrate a genuine issue for trial. Fed.R.Civ.P. 56(e); *LeBlanc,* 6 F.3d at 841. The nonmovant must do more than show "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). An issue is genuine when, based on the evidence, a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512.

In the present case, Rosas claims that she was the victim of sexual harassment by Ramírez. Sexual harassment is a form of sex discrimination which Title VII prohibits. *Oncale v. Sundowner Offshore Services, Inc.,* —— U.S. ——, 118 S.Ct. 998, 1001, 140 L.Ed.2d 201 (1998); *Provencher v. CVS Pharmacy,* 145 F.3d 5, 13 (1st Cir.1998). Sexual harassment may take two forms.

---

13. Docket no. 20, exhibit 6, at 46–47.

14. Docket no. 20, exhibit 8, at 44–45; exhibit 6, at 46.

15. Docket no. 20, exhibit 9, at 50; exhibit 10, at 52.

16. Docket no. 20, exhibit 10, at 52–53; exhibit 11, at 54.

17. Docket no. 20, exhibit 11, at 54; exhibit 12, at 55; exhibit 13, at 56.

18. Docket no. 20, exhibit 17, at 61–62; exhibit 18, at 63–64; exhibit 19.

19. Docket no. 20, exhibit 20.

*Quid pro quo* harassment consists of threats of unfavorable treatment or promises of favorable treatment which are intended to coerce a worker into submitting to unwelcome sexual advances. *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 463 (1st Cir.1996). The second type of harassment-hostile work environment-exists when discriminatory intimidation, insult, or ridicule permeate the work environment in a manner that is so severe and pervasive as to alter the plaintiff's employment conditions and to create an abusive working environment. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993); *Morrison v. Carleton Woolen Mills, Inc.*, 108 F.3d 429, 436–37 (1st Cir.1997). In the present case, Rosas does not specify which type of claim she is bringing. There is no evidence that Ramírez tried to coerce Rosas into submitting to sexual advances in exchange for favorable treatment. Rather, her litany of misconduct by Ramírez sounds in a claim for a hostile work environment, and the Court will treat Rosas' claim as such.

 In determining whether a plaintiff faces a hostile work environment, a court should consider the frequency and severity of the discriminatory conduct; whether the conduct unreasonably interferes with the plaintiff's work performance; whether the conduct is of a physically threatening or humiliating nature, or is merely an offensive utterance; and the conduct's effect on the plaintiff's psychological health. *Harris*, 510 U.S. at 23, 114 S.Ct. at 371. A variety of different forms of offensive behavior may fall within the ambit of what constitutes a hostile work environment. *Morrison*, 108 F.3d at 441. The behavior must alter the employee's work conditions and create an abusive work environment. *Oncale*, —— U.S. ——, 118 S.Ct. at 1003. At the very least, the overtones of the behavior must be recognizable as sex-based discrimination. *Morrison*, 108 F.3d at 441. However, conduct which is merely overbearing or boorish will not, by itself, be sufficient to constitute a hostile work environment, unless there are underlying motives of a sexual or gender discriminatory motive. *Id.; see also Hidalgo v. Overseas Condado Ins. Agencies, Inc.*, 120 F.3d 328, 337 (1st Cir.1997) (Courts should not concerns themselves with the rationality of

an employer's nondiscriminatory business decisions); *Gartman v. Gencorp, Inc.*, 120 F.3d 127, 131 (8th Cir.1997) (Rude comments to female plaintiff which were gender-neutral did not imply a discriminatory attitude toward women as women); *Jones v. Clinton*, 990 F.Supp. 657, 675–76 (E.D.Ark.1998) (Boorish and offensive conduct is not, by itself, sufficient to create a hostile work environment). The law does not prohibit all physical or verbal harassment in the workplace; rather, it prohibits harassment which is motivated by sex-based discrimination. *Oncale*, —— U.S. at ——, 118 S.Ct. at 1002. Thus, a sexual harassment plaintiff will have to prove not only that the conduct was "tinged with offensive sexual connotations," but also that it constituted discrimination because of sex. *Id.*

In the case before the Court, Aramark does not argue that Ramírez' conduct prior to June 11, 1991, did not create a hostile work environment for Rosas. Her testimony would certainly create a genuine issue of material fact on the issue of whether Ramírez' conduct was severe and pervasive and whether a hostile work environment existed. However, Aramark's motion is not based on such an argument; its argument goes to the timeliness of Rosas' claim. Rosas filed her claim with the Puerto Rico ADU on May 29, 1992. This was more than 350 days after Rosas' shift was changed on June 11, 1991. Aramark argues that Rosas claim as to the pre-June 11, 1991, conduct is therefore time-barred. For purposes of the time limit for filing an administrative claim pursuant to Title VII, Puerto Rico is a deferral jurisdiction. *American Airlines, Inc. v. Cardoza-Rodríguez*, 133 F.3d 111, 122 (1st Cir.1998); *Hernandez v. Wangen*, 938 F.Supp. 1052, 1059 (D.P.R.1996). In a deferral jurisdiction, a claimant must file her claim with the Equal Employment Opportunity Commission within 300 days of the alleged discriminatory act. 42 U.S.C.A. § 2000e–5(e)(1) (West 1994); *Lawton v. State Mut. Life Assurance Co. of America*, 101 F.3d 218, 221 (1st Cir.1996); *Hernandez*, 938 F.Supp. at 1059. Rosas filed her claim more than 300 days after the alleged acts which took place prior to June 11,

1991.[20] Thus her claim for the conduct which occurred prior to June 11, 1991, would appear to be time-barred.

In her opposition to Aramark's motion, Rosas argues that Ramírez' conduct constituted a continuing violation and that therefore her claim is timely. The continuing violation doctrine is an equitable exception to the requirement that an administrative claim be filed within 300 days of the discriminatory act. *Provencher*, 145 F.3d at 14; *Lawton*, 101 F.3d at 221–22. A plaintiff may invoke the continuing violation doctrine in one of two ways: as a systemic violation or as a serial violation. *DeNovellis v. Shalala*, 124 F.3d 298, 307 (1st Cir.1997). A systemic violation is based on a discriminatory policy or practice. *Provencher*, 145 F.3d at 14. If the policy is ongoing, the plaintiff's claim will be timely. *Id.* A claim of a systemic violation does not generally require identifiable acts of discrimination that took place within the limitations period. *Id.* Rather, this type of claim refers to the employer's general policies or practices in hiring, compensation, training, and promotion. *Id.*

In the present case, Rosas briefly alludes in her complaint to a policy of her employer. The record, however, does not support such an allegation. There is no evidence of a discriminatory policy by Aramark, and there is no evidence that anyone other than Rosas was subject to the abusive treatment meted out by Ramírez. Once she was put on a new shift, thereby severing her contact with Ramírez, the harassing incidents appear to have ceased. The basis of her claim arises not out of a general Aramark policy, but out of the discriminatory acts of Ramírez. Thus, her continuing violation argument cannot be based on a systemic violation theory.

The second branch of the continuing violation doctrine is applicable when the violation is serial in nature. A serial violation takes place when there is a chain of similar discriminatory acts which arise from the same discriminatory animus and when one of the acts in the chain took place within the statute of limitations period. *Provencher*, 145 F.3d at 14; *Lawton*, 101 F.3d at 221. At least one of the discriminatory acts must have occurred within 300 days of plaintiff's filing of her administrative claim. *DeNovellis*, 124 F.3d at 307–08; *Pilgrim v. Trustees of Tufts College*, 118 F.3d 864, 869 (1st Cir. 1997). The act which occurred within the 300–day period serves as an "anchor" to which the acts occurring outside the period may be linked. *Provencher*, 145 F.3d at 14; *Pilgrim*, 118 F.3d at 869. Thus, the plaintiff must prove that this anchor violation was timely and that it was a part of a pattern of actionable sexual harassment. *Provencher*, 145 F.3d at 14. Moreover, there must be a substantial relationship between the timely anchor violation and the other untimely discriminatory acts. *Sabree v. United Bhd. of Carpenters and Joiners*, 921 F.2d 396, 401–02 (1st Cir.1990); *Hernandez*, 938 F.Supp. at 1059. The timely act must be linked to the untimely ones in similarity, continuity, or repetition. *Provencher*, 145 F.3d at 15. A plaintiff may not link untimely discriminatory acts to timely conduct which lacks a discriminatory animus. *Lawton*, 101 F.3d at 222.

20. Although the record contains a copy of Rosas' claim with Puerto Rico's ADU, there is no evidence that she ever filed a claim with the EEOC. However, the EEOC and the anti-discrimination agency of a state may enter into a worksharing agreement whereby the date a claim is received by one agency is deemed, for purposes of timeliness, to be the same date that it is received by the other agency. *See Worthington v. Union Pacific R.R.*, 948 F.2d 477, 482 (8th Cir.1991); *see also* 29 C.F.R. § 1626.10(c) (1998); *Petrelle v. Weirton Steel Corp.*, 953 F.2d 148, 152–54 (4th Cir.1991); *E.E.O.C. v. Techalloy Maryland, Inc.*, 894 F.2d 676, 677–79 (4th Cir.1990); *McConnell v. Gen. Tel. Co. of Cal.*, 814 F.2d 1311, 1316 (9th Cir. 1987); *Grooms v. Mobay Chemical Corp.*, 861 F.Supp. 497, 502–03 (D.S.C.1991), *aff'd*, 993 F.2d 1537, 1993 WL 165052 (4th Cir.1993). The parties have not submitted evidence of a workshare agreement between the EEOC and Puerto Rico's ADU. It does appear that the EEOC and the ADU have in the past entered into such an agreement. *See Matos Molero v. Roche Products, Inc.*, 93 JTS 6, 10315–16 (1993); *Silva v. Universidad de Puerto Rico*, 849 F.Supp. 829, 831–32 (D.P.R.1994). For purposes of the present motion for summary judgment, the Court will assume that for the relevant time periods a workshare agreement existed between the EEOC and Puerto Rico's ADU. *See Grooms*, 861 F.Supp. at 503 n. 7. Accordingly, the Court will assume that Rosas filed a claim with the EEOC on May 29, 1992, the same date as her filing with the ADU.

Thus, for Rosas' claim to be timely, she must establish the existence of at least one discriminatory act that occurred within 300 days of May 29, 1992–the date she filed her administrative claim-and she must establish that this timely discriminatory act is similar to, continuous of, or repetitive of Ramírez' conduct which occurred prior to June 11, 1991. *See Provencher*, 145 F.3d at 14–15; *Pilgrim*, 118 F.3d at 869. She is unable to meet these requirements. The First Circuit's recent opinion in *Provencher* has a resonance to the present case which proves fatal to Rosas' claim. Plaintiff Provencher was a gay man who initially worked as an assistant store manager for the defendant pharmacy chain. While he was an assistant manager he was subject to crude comments about his homosexuality from his supervisor Banaian. Banaian also disrobed herself in Provencher's presence and touched his genital area. *See* 145 F.3d at 13. In April 1992 Provencher was promoted to work as the manager of another one of defendant's stores. Banaian called him once in late 1992 or early 1993 after he was promoted to say that she missed him and that she no longer had anyone with whom she could change clothes. *Id.* In 1994 Banaian began to shop on a daily basis at the store that Provencher was managing. Also, in March 1995 an unidentified man whom plaintiff suspected to be Banaian's husband called him to threaten to spill Provencher's "AIDS blood" all over the parking lot. Two days later, Banaian went to Provencher's store and refused to leave. He called the police to escort her from the store. As early as 1992, Provencher had complained to defendant about Banaian's conduct, but no remedial action was ever taken. Provencher filed his administrative claim alleging a hostile work environment in January 1995. Thus, the only conduct which fell within the 300–day period was Banaian's shopping at plaintiff's store and the phone call. *Id.*

The First Circuit held that the conduct at issue did not constitute a continuing serial violation. The court held that the purpose of the continuing violation doctrine is to allow a claim for acts whose discriminatory character was not apparent to the plaintiff at the time they occurred. Provencher admitted that he knew while he was working as an assistant manager that Banian's conduct constituted harassment. Thus, he could not claim a continuing violation. *See id.* at 15. Additionally, Provencher could not show that the timely conduct was linked by similarity, repetition, or continuity to the untimely harassing conduct. The court found that Banaian's conduct while she was Provencher's supervisor and her phone call to him were extreme in nature. By contrast, her shopping at Provencher's store was neutral non-discriminatory behavior. The court held that the conduct which occurred within the 300–day period was too separated by time and character from Banaian's earlier truly harassing conduct to be considered a repetition of the untimely acts.[21] Thus, the timely conduct could not serve as an anchor to be linked to the untimely conduct. *See id.* at 16. Moreover, Banaian's shopping at Provencher's store was insufficient, by itself, to support a claim of sexual harassment. *Id.*

The First Circuit's reasoning in *Provencher* is equally applicable to the present case. By June 1991, Rosas had complained to Sierra that Ramírez' conduct constituted harassment.[22] Thus, she knew that she was being harassed. *See id.* at 15 (A plaintiff cannot claim a continuing serial violation if she was aware at the time of the untimely acts that they were harassment). Moreover, the only timely act which appears in the record—the incident of May 20, 1992–is neutral in character. There is nothing in the record to indicate that her argument with Ramírez on that date and her being fired by Sierra the next day were caused by a sex-based discriminatory animus. It appears that Ramírez and Rosas argued over where she could eat her sandwich during her break and that Sierra sided with Ramírez on the issue. While this may appear to be an unfair, overly petty

---

21. The court also held that there was no evidence, other than Provencher's unsubstantiated suspicion, to link the phone call regarding "AIDS blood" to Banaian. *See Provencher*, 145 F.3d at 16.

22. Docket no. 20, exhibit 3, at 88–92; exhibit 4, at 83.

reason for firing someone, it is a reason devoid of a discriminatory animus. Thus, Rosas may not rely on the events of May 20, 1992. *See Hidalgo,* 120 F.3d at 337 (Court may not concern itself with the rationality of an employer's nondiscriminatory business decisions); *Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 16 (1st Cir.1994) (Title VII does not grant relief to an employee who has been discharged unfairly by an irrational manager, unless the facts indicate that a discriminatory animus was the reason for the dismissal). And while Ramírez' pre-June 11, 1991, conduct was extreme enough to constitute sexual harassment, the nondiscriminatory conduct of May 20, 1992, is too dissimilar in nature and too removed in time to serve as an anchor to which the earlier conduct may be linked. *See Provencher,* 145 F.3d at 16; *see also Lawton,* 101 F.3d at 221–22 (Plaintiff's firing, which was not traceable to a discriminatory animus, could not be used as an anchor to link time-barred discriminatory acts). There is therefore no substantial relation between the timely conduct and the untimely conduct. Moreover, there is nothing in the record to indicate · that the timely conduct was based on sex discrimination. Accordingly, the Court is compelled to hold that Rosas' claim for sexual harassment is time-barred. Aramark's motion for summary judgment is granted.[23]

▮ Lastly, Rosas has also brought local law claims pursuant to Puerto Rico's Law 100 and Article 1802 of the Civil Code. The assertion of supplemental jurisdiction over state law claims is within a federal court's discretion. *United Mine Workers of Amer. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). If federal law claims are dismissed before trial, however, the state law claims should also be dismissed.

*Id.* at 726, 86 S.Ct. at 1139; *Figueroa Ruiz v. Alegria,* 896 F.2d 645, 650 (1st Cir.1990); *Soto v. Carrasquillo,* 878 F.Supp. 324, 332 (D.P.R.1995), *aff'd sub nom. Soto v. Flores,* 103 F.3d 1056 (1st Cir.1997). Because the Court has dismissed Rosas' Title VII claim, the Court hereby dismisses without prejudice her Puerto Rico law claims.

WHEREFORE, the Court hereby grants Aramark's motion for summary judgment (docket no. 15). Judgment shall be entered accordingly.

IT IS SO ORDERED.

---

**23.** In her motion for summary judgment, Rosas seems to argue that her claim is also one for an unlawful retaliation. Rosas made no such claim in her complaint. Even if the Court were to allow her to add this claim, however, it would fail. A plaintiff making a claim under Title VII for retaliation must show that she engaged in protected conduct, that she suffered an adverse employment action, and that there is a causal connection between her protected conduct and the adverse action. *Randlett v. Shalala,* 118 F.3d 857, 862 (1st Cir.1997). For the claim to succeed, the employer must have taken the adverse employment action for the purpose of retaliating against the plaintiff. *Id.* The plaintiff must therefore adduce some evidence of retaliation. *Id.* Assuming that Rosas' protected conduct was her complaining to Sierra about Ramírez in 1991 and that the adverse employment action was her being fired in 1992, the Court finds that there is no evidence in the record that Rosas was fired in retaliation for her complaining about Ramírez' conduct in 1991. Thus, to the extent that Rosas is also making a claim for retaliation, it too must be dismissed.