UNITED PARCEL SERVICE, INC.,
United Parcel Service Co.
Plaintiffs

v.

Juan A. FLORES–GALARZA, Secretary
of the Department of the Treasury of
the Commonwealth of Puerto Rico, in
his official capacity Defendant

No. CIV. 01–1894CCC.

United States District Court,
D. Puerto Rico.

May 15, 2002.

Pedro J. Manzano–Yates, San Juan, PR, Heriberto J. Burgos–Pérez, San Juan, PR, for Plaintiffs.

Luis Sánchez–Betances, Hato Rey, PR, Gerardo de-Jesús-Annoni, San Juan, PR, for Defendant.

## OPINION AND ORDER

CEREZO, District Judge.

Plaintiffs, United Parcel Service, Inc. and United Parcel Service, Co. (collectively UPS), challenge Puerto Rico's statutory scheme prohibiting them from making deliveries to any recipient of a package ("consignee") that has not obtained a certificate from the Department of the Treasury authorizing the delivery. Plaintiffs also challenge the alternate mechanism that allows them to take possession of the packages and deliver them to the recipient, subject to complying with a comprehensive set of regulations and conditions that impact their operations.

Because these requirements directly relate to the manner in which air carriers, such as plaintiffs, provide services to customers and generally conduct their operations and also impact their routes and prices, the Court holds that the challenged statutory scheme is preempted by the Federal Aviation Administration Authori-

zation Act of 1994 ("FAAAA"), 49 U.S.C. § 41713(b)(4). It is, therefore, invalid and unenforceable under the Supremacy Clause of the United States Constitution.[1]

## I. *Procedural background*

Plaintiffs' complaint (docket entry 1) asserts four counts under 42 U.S.C. § 1983:(1) preemption by the FAAAA, pursuant to the Supremacy Clause of the United States Constitution; (2) a Commerce Clause violation; (3) an Equal Protection Clause violation; and (4) a Takings Clause violation. A fifth count for declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 was also averred. Plaintiffs seek declaratory and injunctive relief enjoining defendant Juan A. Flores–Galarza, Secretary of the Department of the Treasury of the Commonwealth of Puerto Rico (Secretary), from enforcing the challenged statutes and regulations against plaintiffs or penalizing them for not complying.

Before us is plaintiffs' Motion for Summary Judgment (docket entry 23). On March 12, 2002, the Court ordered the defendant to oppose this motion on or before March 21, 2002. Defendant instead moved to stay the proceedings and, in the alternative, to grant an extension to conduct discovery in order to oppose the summary judgment motion. Both requests were denied. As to defendant's request for extension to conduct discovery, the Court noted that he had not only failed to comply with Fed.R.Civ.P. 56(f), but had had ample opportunity to conduct discovery during the six months since the filing of the motion.

In an untimely Opposition filed on April 8, 2002 (docket entry 66), defendant merely "adopt[ed] by reference [his] Motion to Dismiss Pursuant to Rule 12(b)(6) and its Memorandum of Law in Support thereof." Docket entry 66, at p. 7, ¶ 4. Defendant did not file a statement of contested facts as required by Local Rule 311.12, and failed to undertake any effort to dispute the facts set forth in the Statement of Material Undisputed Facts attached to plaintiffs' motion for summary judgment. Accordingly, the facts set forth in plaintiffs' statement are hereby deemed admitted pursuant to Local Rule 311.12. *See Laracuente v. Chase Manhattan Bank,* 891 F.2d 17, 19 (1st Cir.1989); *see also Cardona v. Aramark Services of Puerto Rico, Inc.,* 9 F.Supp.2d 92, 95 (D.Puerto Rico 1998) ("When a party opposing a motion for summary judgment fails to submit a statement of contested material facts, the court must deem to be admitted

---

**1.** On March 29, 2002, the Court granted (*see* docket entry 61) the motion by the Air Transport Association of America, Inc. (ATAA), a trade and service association of the larger United States' air carriers, for leave to file an *amicus* brief in support of plaintiffs' complaint and motion for preliminary and permanent injunction (docket entry 21). ATAA's position is summarized at page 5 of the *amicus* brief (docket entry 62):

These extremely intrusive requirements relate to airline prices, services and routes because they prevent or delay the delivery of cargo services to consignees in Puerto Rico and force air carriers to change their mode of operations. The breadth of the Puerto Rico provisions and the extent to which they interfere with air carrier cargo services, are unique and amount to the "forbidden significant effect" found in *Morales [v. Trans World Airlines, Inc.],* 504 U.S. [374] at 388, 112 S.Ct. 2031, 119 L.Ed.2d 157 [(1992)]. Since 1978, Congress has prohibited state and local governments from erecting the kind of regulatory scheme established by Puerto Rico. No other jurisdiction in the nation subjects airlines and consumers to the burdens imposed by provisions of this type.

the movant's properly supported statement of material facts.")

## II. *Standard for summary judgment*

Whether or not federal law preempts a state statute is a question of law. *See U.S. v. Rhode Island Insurers' Insolvency Fund,* 80 F.3d 616, 619 (1st Cir.1996). Accordingly, summary judgment is proper if the Court concludes that a challenged statute is preempted. *See International Auto. Mfrs. v. Commissioner,* 208 F.3d 1, 4 (1st Cir.2000) (affirming grant of summary judgment in favor of plaintiffs because federal law preempted challenged state regulations); *First Fed. S. & L., Boston v. Greenwald,* 591 F.2d 417, 426 (1st Cir. 1979) (affirming grant of summary judgment because federal law preempted state law).

The party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact for trial. *See* Fed.R.Civ.P. 56(c), *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has demonstrated that no genuine issue of material fact exists, the non-movant must contradict this showing by pointing to specific facts demonstrating that there is, indeed, a trial-worthy issue. Fed.R.Civ.P. 56(e); *see also National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.1995).

Plaintiffs complied with their initial burden by submitting a statement of uncontested facts that was adequately supported by documentary evidence and affidavits. The burden then shifted to the defendant to establish a genuine dispute of material fact that would preclude summary judgment. Defendant failed to satisfy that burden. The relevant facts, adequately supported by the record, and the analysis of the challenged statutory scheme are summarized below:

## III. *Discussion*

### A. The challenged statutory scheme and its impact on the services provided by air carriers in Puerto Rico.

Plaintiff United Parcel Service Co. is authorized by the Federal Aviation Administration to operate as an air carrier for the transportation of property. Co-plaintiff United Parcel Service, Inc., is engaged in the transportation of property by motor vehicles and is affiliated with United Parcel Service Co. through common controlling ownership. As a package distribution company, UPS ships packages and documents to destinations worldwide. UPS provides door-to-door delivery services of packages, including express parcels and time definite delivery of packages and documents. UPS guarantees delivery of express packages at a time and date certain after the package has been picked up, and, under certain conditions, refunds shipping charges for packages not delivered on time.

The record shows that UPS' operations function as an integrated system, based on careful planning of routes, team work and company resources. With regard to packages shipped in the United States, shippers generally pack the parcel and complete a shipping record which identifies the consignee, the weight of the package and the number of packages. While UPS has the right to inspect packages for contraband or dangerous materials, it does not ordinarily open or inspect packages or require the shipper to identify the contents of the packages or document their value. This allows UPS to streamline its package handling, and avoid interruptions, delays and paperwork that would otherwise be required.

Plaintiffs have challenged defendant's enforcement of Puerto Rico's statutes and

regulations[2] which force them to deviate significantly from these standard operating procedures and services in the transportation and delivery of goods to consignees in Puerto Rico. The cornerstone of the challenged statutes provides in relevant part:

> No ... carrier who has taxable items in custody may deliver them to the consignee ... unless the person presents a certificate from the Secretary authorizing its delivery. Any carrier who violates this provision shall be subject to the imposition of an administrative fine and the payment of the tax corresponding to said articles, including surcharges and interest....

13 L.P.R.A. § 9066. A related provision, 13 L.P.R.A. § 9068(b)(1), requires that the person responsible for paying an excise tax on articles introduced to Puerto Rico "by any means other than the mails or personally" must first pay the tax before claiming the article. Plaintiffs challenge this provision only to the extent it is applied, in conjunction with 13 L.P.R.A. § 9066, to prohibit them from delivering packages to consignees who have not paid taxes on articles transported by the carriers.

As an alternative to the statutory ban on carriers' delivering taxable items to consignees who do not have a certificate from the Secretary authorizing the delivery, Puerto Rico has created a statutory and regulatory "prepayment mechanism." The statutes and regulations establishing the prepayment mechanism permit authorized carriers who meet specified criteria to deliver packages to consignees who have not obtained a certificate from the Secretary, if the carriers prepay the excise taxes due to the Secretary from the consignees and comply with the requirements of the governing statutes and regulations.

The statute authorizing the prepayment mechanism, 13 L.P.R.A. § 9077, provides in part: "The Secretary may authorize air and sea freight carriers to pay the taxes on articles introduced into Puerto Rico by their clients and to take possession of them...." *See also* Article 6.005. The regulations implementing the prepayment mechanism require carriers to adhere to certain procedures in providing services in order to make deliveries to consignees who have not obtained certificates of authorization from the Secretary. Among other requirements, the 1994 Procedures require a carrier to provide to the Treasury Department on a daily basis a "commercial invoice stating the actual cost" of the goods and "a complete description" of the contents for each package; "separat[e] for inspection" certain merchandise based on value and relative weight; provide a "shipment manifest" segregating packages by

---

**2.** Specifically, plaintiffs challenge: (a) the provisions of the Puerto Rico Internal Revenue Code codified in 13 L.P.R.A. §§ 8102, 8140, 9060, 9061, 9064, 9066, 9068, 9077; (b) the 1994 "Procedure for Freight Air and Ocean Forwarders who are Authorized for the Secretary of the Treasury to Pay Taxes and Take Credit for Articles Returned or Paid in Excess or Improperly" (hereinafter the "1994 Procedures"); (c) Articles 2.014, 5.004, 5.005, 5.008, 6.001, 6.005 and 7.001 of the Regulations for the Administration and Enforcement of the Excise Tax Law of the Commonwealth of Puerto Rico (hereinafter the "Articles"); and (d) any other statute, regulation, or other provision having the force and effect of law related to the price, route, or service of interstate air carriers that transport property into Puerto Rico or that otherwise regulate or burden the manner in which such carriers provide service in Puerto Rico. While this action was pending, defendant invoked his enforcement powers granted by 13 L.P.R.A. § 8080 in imposing a fine on plaintiffs because they failed to provide daily shipment manifests, an obligation which plaintiffs contend is preempted by the FAAAA. Plaintiffs challenge that provision as well. In addition, in their brief supporting their summary judgment motion plaintiffs also challenged 13 L.P.R.A. § 9059.

various categories;[3] and permit Treasury agents access to shipping operations to "supervise" the process of introduction, imposition, and payment of the excise tax. *See* 1994 Procedures, ¶¶ 1, 2, 3(d), 4, 8, 10, 11; *see also* 13 L.P.R.A. §§ 8140(1), 8102(a), (b) (carriers must make records and premises available to inspection and retain records for specified time periods); Article 2.014. Other regulations require carriers to submit "shipment documents" for "each shipment introduced into Puerto Rico within 24 hours of its arrival." *See* Article 2.014; *see also* 1994 Procedures, ¶ 11.

To do business in Puerto Rico, carriers must obtain a license from the Treasury Department, 13 L.P.R.A. § 9060. They must submit certain information, including copies of income tax returns and criminal records of each officer of the corporation in order to obtain the license, 13 L.P.R.A. § 9060(a)(1)-(6); Article 5.004, pay a license fee, 13 L.P.R.A. § 9059, and post a bond, 13 L.P.R.A. § 9064; Article 5.008. To obtain authorization to prepay the taxes owed by the consignees and, thereby, obtain the right to "take possession" of the packages they transport, carriers must post an additional bond "to secure the payment of all the corresponding taxes and any surcharges, interest or administrative fines imposed for this concept under this Part." *See* 13 L.P.R.A. § 9077; *see also* Article 6.005. The Secretary has discretion to deny, suspend or revoke any license of any person who does not meet the requirements of the statutory title, or in certain other specified circumstances. 13 L.P.R.A. § 9061; Article 5.005. A carrier that fails to comply with the statutes or regulations concerning delivery of packages to consignees in Puerto Rico may have its license to do business revoked by the Secretary and may be subject to an administrative fine. 13 L.P.R.A. §§ 8080(a), 8140(6); Article 5.005.

UPS has submitted evidence that, in order to operate in Puerto Rico, it has been required to alter the uniform procedures it employs elsewhere in the United States and that complying with Puerto Rico's requirements causes delays and in some instances outright prevents UPS from providing delivery services in Puerto Rico. First, complying with the statutory ban on deliveries to consignees who do not have a certificate from the Treasury Department authorizing the delivery has an obvious impact on UPS's delivery services and routes. Complying with the ban re-

---

**3.** Subsumed in this controversy is a $14,420,000 fine that the defendant imposed on the plaintiffs four months after the filing of the complaint. The Court finds that the documentary evidence establishes that the fine was imposed because plaintiffs failed to submit a "shipment manifest" for each of the two business days in July 2001 in which the challenged scheme was not in effect. The Court concludes that the obligation to submit manifests is imposed by the preempted statutes and regulations. Therefore, the defendant's imposition and enforcement of the fine for failing to submit shipment manifests—like all other aspects of the scheme—is preempted and invalid. The Court is mindful of its previous ruling (docket entry 45) that plaintiffs were not entitled to a preliminary injunction in part because they could pursue administra-

tive review of the fine and therefore had not established that they would be irreparably harmed by the fine in the absence of preliminary injunctive relief. However, now that the Court is deciding the merits of the action and has concluded that the challenged scheme, including enforcement of the fine, is preempted and unconstitutional, the doctrine of exhaustion of administrative remedies does not apply. *See Califano v. Sanders,* 430 U.S. 99, 109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) ("Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions"); *Ezratty v. Com. of Puerto Rico,* 648 F.2d 770, 774 (1st Cir.1981) (exception to exhaustion doctrine when the issue is "a pure matter of law").

quires that UPS first notify the consignee that a package has arrived, and then wait while the consignee obtains information to determine the amount of excise tax due, pays the tax, obtains a certificate authorizing delivery of the package, and thereafter notifies UPS that he is ready to accept delivery. Only after all of those steps are completed can UPS lawfully deliver the package. Second, the uncontested evidence establishes that complying with Puerto Rico's prepayment requirements, which UPS must do in order to obtain the right to deliver packages directly to consignees, also impacts its services.[4] The requirements also impact UPS' relationships with its shippers. UPS must require its shippers sending packages to Puerto Rico to provide two copies of commercial invoices, showing actual costs and a complete description of the contents for each package. Similarly, UPS has had to modify the publications it provides to and for shippers to instruct them how to comply with regulations applicable to packages destined for Puerto Rico; tailor its software and customer shipping tools; and develop specific forms and record-keeping and reporting functions tailored to Puerto Rico requirements. UPS must perform a tax rating on the contents of each package, *i.e.* determine whether the contents are taxable or exempt, determine whether the consignee is exempt from paying excise taxes, and calculate the tax due from the consignee. Once the rating is performed, UPS must generate individual tax declarations for the packages and prepay the excise taxes due from consignees within 24 hours after the package arrives in Puerto Rico. UPS must submit the commercial

invoices supplied by the shipper to the Treasury Department and create a daily shipping manifest containing information in a specified format and submit it to the Treasury Department. UPS must make its premises available to Treasury Department officials to supervise required procedures and inspect packages, and provide assistance to Treasury Department officials on-site. UPS' packages that are subject to the prepayment mechanism are interrupted in their delivery, and held back while procedures are complied with. In addition, UPS' records and electronic files are subject to audit and inspection. UPS must also retain records related to the packages it delivers pursuant to the prepayment mechanism for at least five years. UPS staff must be specially trained to perform these various functions to comply with Puerto Rico's procedures.

Once these procedures are completed, UPS may deliver the package and attempt to obtain reimbursement of the prepaid excise amounts from the consignee, which requires its drivers to spend additional time at delivery stops and make return trips in order to attempt to obtain reimbursement. Treasury Department officials can retroactively change tax assessments of packages after they have been delivered, requiring UPS to prepay the additional amount assessed and to engage in efforts to obtain reimbursement of the reassessed amount from the consignee. If the consignee were entitled to a reimbursement of taxes for undue or excessive payments, UPS must claim the credit on the future payment made to the Treasury Department but only on condition of posting a bond in an amount to be determined

---

**4.** Because plaintiffs must comply with the prepayment requirements in order to obtain the right to deliver packages to consignees who do not have a certificate from the Secretary, the Court questions defendant's characterization of plaintiffs' compliance as "voluntary." But whether or not voluntary, the statutes and regulations comprising the prepayment mechanism are laws enforced by Puerto Rico that relate to carriers' services, routes, and prices and therefore are within the scope of the FAAAA.

as per a statutory formula. To get the credit for the prepaid amount that was not due or was paid in excess on behalf of the consignee, UPS must submit the information and documents required and listed in Article 7.001. UPS does not perform any of these steps for packages traveling elsewhere in interstate commerce.

Plaintiffs have satisfactorily demonstrated that the challenged statutory scheme significantly impacts their **services** to be allowed to deliver packages in Puerto Rico, and that these procedures are not required elsewhere in the United States.

Plaintiffs submitted evidence that the challenged statutory scheme significantly impacts their **routes** to be allowed to deliver packages in Puerto Rico. Plaintiffs segregate packages traveling to Puerto Rico for special processing and route them to specified locations based on the need to have trained personnel perform the various tasks imposed by the statutory scheme, including the collection and verification of information regarding the shipper, consignee, and package contents. If plaintiffs cannot obtain all of the information required by the scheme, they must interrupt the package's routing while they attempt to obtain the information. If those efforts are unsuccessful, they have to return the package to the shipper. Once plaintiffs prepay the taxes owed by the consignee, they make multiple delivery attempts for the sole purpose of resolving any objections by the consignee to the excise taxes prepaid by plaintiffs and obtaining reimbursement of the prepaid tax. If a consignee's objections to the tax are not resolved, plaintiffs must send the package back to the shipper. Again, UPS does not perform these steps for packages traveling elsewhere in interstate commerce. Compliance with the challenged statutory scheme increases UPS's costs substantially, more than $4.6 million each year.

### B. Termination and reinstatement of the challenged scheme

On June 30, 2001, Act No. 322 of November 6, 1999 (Act 322), became effective. The Puerto Rico Legislature enacted Act 322 based on its determination that the statutory scheme described above was preempted by the FAAAA. Act 322 terminated the restrictions on air carriers' transportation and delivery of taxable items to consignees that do not have a certificate from the Secretary authorizing delivery. It provided the Treasury Department an eighteen-month transition period to achieve compliance with federal law. During that period Puerto Rico authorized carriers to receive five percent of the prepaid taxes they remitted to the Treasury Department as a partial "reimbursement for their costs." (Joint Resolution No. 630 of Nov. 6, 1999, § 1, at 5.)

Act 322 was in effect for only two business days when Act No. 50 of July 3, 2001 (Act 50) was enacted. It repealed Act 322 and reinstated both the prohibition on deliveries to consignees who do not have a certificate from the Secretary and the prepayment mechanism. Plaintiffs filed this action on July 3, 2001, the same day that Act 50 was enacted.

### C. The Butler Act

Plaintiffs' action is within the jurisdiction of the Court pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1337(a) (Act of Congress regulating commerce), and 28 U.S.C. § 1343(a)(3) (actions pursuant to 42 U.S.C. § 1983).

On July 16, 2001, defendant filed a motion to dismiss (docket entry 8) on the ground that the Butler Act, 48 U.S.C. § 872, barred jurisdiction. The Butler Act provides that "[n]o suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Puerto

Rico shall be maintained in the United States District Court for the District of Puerto Rico." 48 U.S.C. § 872. After careful review of the complaint and the briefs, the Court harbors no doubt that plaintiffs' action exclusively challenges Puerto Rico's laws barring carriers from making deliveries not authorized by the Secretary and dictating the manner in which other deliveries can be made. (*See* 13 L.P.R.A. §§ 9066, 9077.) Plaintiffs do not question nor seek to restrain the Commonwealth's authority to levy and collect taxes.

■ Defendant takes the position that the Butler Act bars a challenge to these non-tax regulations because freeing carriers from their restrictions could have an impact on the collection of taxes. That is not the scope of the Butler Act. Its jurisdictional bar is limited to challenges whose purpose is aimed at restraining the assessment or collection of any tax. The Court of Appeals for the Eighth Circuit rejected a similar argument in *Ben Oehrleins & Sons & Daughter v. Hennepin County*, 115 F.3d 1372, 1383 (8th Cir.1997), holding that the Tax Injunction Act (a statute analogous to the Butler Act) did not bar federal suit because "the plaintiffs do not question the County's authority to levy taxes [but] challenge the County's regulation of their ability to deliver waste to the facilities of their choice," despite the fact that the "relief they seek may well affect the revenue." 115 F.3d at 1383. As in *Oehrleins*, this Court holds that relieving plaintiffs of the restrictions on deliveries imposed by the preempted statutory scheme does not "restrain[ ] the assessment or collection of

any tax," and does not implicate the Butler Act.

D. The Federal Relations Act

■ Defendant contends that Section 3 of the Puerto Rican Federal Relations Act, 48 U.S.C. § 741a, immunizes the challenged statutes and regulations from preemption. As stated before, this is not an action for the purpose of restraining the assessment or collection of a tax. It does not implicate the Federal Relations Act, which permits Puerto Rico excise taxes to be "levied and collected ... as soon as [articles subject to the tax] are ... brought into the island." 48 U.S.C. § 741a.

Furthermore, Congress has consistently expressed its intent that federal aviation law apply to Puerto Rico "notwithstanding" currently applicable provisions of the Federal Relations Act, including Section 3. *See e.g.* Civil Aeronautics Act of 1938, Pub.L. No. 75–706, Title I, § 1(29), 52 Stat. 973, 979; *see also* 48 U.S.C. § 734. *West India Oil Co. (P.R.) v. Domenech*, 311 U.S. 20, 61 S.Ct. 90, 85 L.Ed. 16 (1940), is not to the contrary. That decision explains that the Section 3 language permitting Puerto Rico to levy a tax "as soon as" the taxable goods are brought into the Island was added to close a loophole created because Postal and Customs Services employees did not collect the tax while the merchandise was still in the "original package"—*i.e.*, still in the process of importation. 311 U.S. at 28, 61 S.Ct. 90. It does not address Puerto Rico's ability to regulate private carriers.[5]

---

5. Defendant's argument that the Federal Relations Act permits Puerto Rico to impose restrictions on private carriers transporting goods in interstate commerce is contradicted by Congress's declared intent that "the government of Porto Rico will so make use of this power [to levy and collect taxes] as not to unnecessarily place any barriers in the way of the free-trade conditions now existing between (Porto Rico) and the mainland, which is the principal factor in the progress and prosperity of Porto Rico." S.Rep. No. 69–1011 (1926), at 2, *quoted in West India*, 311 U.S. at 31, n. 1, 61 S.Ct. 90.

■ Nor is the challenged statutory scheme entitled to a presumption against FAAAA preemption by virtue of the Federal Relations Act. "[A]n 'assumption' of non-preemption is not triggered when the State regulates in an area where there has been a history of significant federal presence." *United States v. Locke*, 529 U.S. 89, 108, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000). There is a long history of federal presence in the field of interstate air transportation of property. *See e.g. North Am. Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229, 233–34 (2d Cir.1978).

### E. FAAAA preemption

The FAAAA bars any "State" from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier ... when such carrier is transporting property by aircraft or by motor vehicle." 49 U.S.C. § 41713(b)(4)(A). The laws of Puerto Rico are considered to be "State" laws within the scope of section 41713(b)(4), as the applicable statutory definition of "State" provides: "In this section, 'State' means a State, the District of Columbia, and a territory or possession of the United States." 49 U.S.C. § 41713(a). Defendant does not contest that plaintiffs are air carriers of property covered by the FAAAA.

Congressional intent is the touchstone of preemption analysis. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992); *cf. United States v. Acosta–Martinez*, 252 F.3d 13, 18 (1st Cir.2001) (federal death penalty applies in Puerto Rico notwithstanding provisions of Puerto Rico

Constitution barring death penalty), *cert. denied,* ––– U.S. –––, 122 S.Ct. 1207, 152 L.Ed.2d 145 (2002). Congress enacted the FAAAA to eliminate a "patchwork" of state regulation of the transportation of property, which had "imposed an unreasonable burden on interstate commerce [and] impeded the free flow of trade, traffic, and transportation of interstate commerce." FAAAA, Pub.L. 103–305, Title VI, § 601, 108 Stat. 1569, 1605 (1994) (codified at 49 U.S.C. §§ 14501(c)(1), 41713(b)(4)(1997)); H.R. Conf. Rep. No. 103–677, at 87–88, *reprinted in* 1994 U.S.C.C.A.N. at 1759–60.

Congress intended to eliminate obstacles to "national and regional carriers attempting to conduct a standard way of doing business," so that "[s]ervice options will be dictated by the marketplace; and not by an artificial regulatory structure." H.R. Conf. Rep. No. 103–677, at 87–88, *reprinted in* 1994 U.S.C.C.A.N. at 1759–60; *see also* 49 U.S.C. § 40101(b)(2) (declaring Congress's policy to encourage and develop "an integrated transportation system relying on competitive market forces to decide the extent, variety, quality, and price of services provided.")

Congress expressly incorporated "the broad preemption interpretation adopted by the United States Supreme Court in *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 388, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992)" into the FAAAA. H.R. Conf. Rep. No. 103–677, at 83, *reprinted in* 1994 U.S.C.C.A.N. at 1755.[6] The scope of *Morales*, therefore, defines the scope of the FAAAA. *Morales* holds that a state law relates to price, route, or service and is

---

**6.** *Morales* interpreted the Airline Deregulation Act of 1978(ADA), 49 U.S.C. § 41713(b)(1)-(3), which, as originally enacted, barred states from " 'enact[ing] or enforc[ing] any law, rule, regulation, standard, or other provision ... relating to rates, routes, or services of any

air carrier.' " *Morales*, 504 U.S. at 383, 112 S.Ct. 2031 (quoting former 49 U.S.C. § 1305(a)(1) (alteration in original)). The ADA currently contains the identical "related to a price, route, or service" language used in the FAAAA. *See* 49 U.S.C. § 41713(b)(1).

preempted if it either: (1) makes "express reference" to carriers' price, route, or service, or (2) has a "forbidden significant effect" on price, route, or service. *Morales*, 504 U.S. at 388, 112 S.Ct. 2031. The Court finds that the challenged scheme is preempted under both of these alternative tests.

■ The scheme makes "express reference" to carriers' service. It expressly prohibits carriers from making deliveries to consignees who do not have a certificate from the defendant authorizing the delivery (13 L.P.R.A. § 9066). The prepayment mechanism of the scheme dictates the manner in which carriers handle, transport, and deliver packages—including requiring that they prepay excise taxes owed by consignees—in order to obtain the right to "take possession" of packages for delivery in Puerto Rico (13 L.P.R.A. § 9077). For example, carriers are required to provide the Treasury Department with specified information concerning the goods transported, to separate goods for inspection based on specified criteria, and to permit Treasury agents access to shipping operations for them to "supervise" the process of introduction, imposition, and prepayment of the excise tax. (1994 Procedure, ¶¶ 1, 2, 3(d), 4, 8, 10, 11; 13 L.P.R.A. §§ 8140(1), 8102(a), (b); Article 2.014). Carriers must also submit specified reports concerning their shipments, in specified form and within specified time periods. (Article 2.014; 1994 Procedures, ¶¶ 4, 8.) Carriers must post an additional bond to participate in the prepayment mechanism (13 L.P.R.A. § 9077; Article 6.005). All of these provisions make express reference to carriers' service. Therefore, under the first *Morales* test, they, and their enforcement mechanisms, are preempted by the FAAAA.

The statutory scheme, on its face, also has a "forbidden significant effect" on plaintiffs' service and routes, because it prohibits deliveries to consignees who do not have a certificate from the Secretary unless the carriers first calculate and prepay excise taxes due from those consignees and comply with numerous licensing, processing, and other requirements regulating the manner in which they provide service. The extensive record submitted by plaintiffs also demonstrates that the challenged scheme has an actual significant impact on their services and routes. Thus, the scheme satisfies the second *Morales* test both on its face and as established by the evidence on the record.

The evidence also establishes that the challenged statutory scheme increases UPS' costs substantially. This substantial increase in UPS' costs impacts UPS' prices. As the Ninth Circuit has held: "Terms of service determine cost. To regulate them is to affect the price." *Federal Exp. v. California Public Utilities Com'n*, 936 F.2d 1075, 1078 (9th Cir.1991).

None of the cases cited by defendant in his dismissal motion (docket entry 26) involve state laws with an express reference to or direct effect on carriers' prices, routes, or services, such as the prohibition against deliveries and regulation of the manner of service at issue here. Instead, defendant relies on cases involving generally applicable state laws that do not expressly refer to, and have only remote, indirect effects on price, route or service (or on ERISA plans), such as prevailing wage laws (*Cal. Labor Standards v. Dillingham Const.*, 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997)), anti-discrimination laws (*Abdu–Brisson v. Delta Airlines, Inc.*, 128 F.3d 77, 82, 84–85 (2d Cir.1997)), and personal injury claims (*Rodriguez v. American Airlines, Inc.*, 886 F.Supp. 967, 971 (D.Puerto Rico 1995)).

Post-*Morales* cases applying a more narrow interpretation of the "relates to" language in the ERISA preemption provision do not affect the scope of FAAAA preemption, because Congress expressly adopted *Morales* as the scope of FAAAA preemption. H.R. Conf. Rep. No. 103–677, at 83, *reprinted in* 1994 U.S.C.C.A.N. at 1755. *See also Wine & Spirits Wholesalers of Mass., v. Net Contents*, 10 F.Supp.2d 84, 87 (D.Mass.1998) (referring to the Supreme Court's interpretation in *Morales* that the words "relating to" contained in the ADA are to be read broadly to mean "having a connection with or reference to.")

If Puerto Rico and the states were permitted to enforce the restrictions at issue here—including the outright ban on deliveries contained in 13 L.P.R.A. § 9066—interstate air cargo carriers would be subjected to a patchwork quilt of state and local laws rather than the uniform federal laws that Congress has determined best serve the free flow of interstate commerce. That is precisely what Congress has prohibited through the FAAAA.

IV.   Conclusion

The standard for issuing a permanent injunction requires a determination that (1) plaintiffs prevail on the merits; (2) plaintiffs would suffer irreparable injury in the absence of injunctive relief; (3) the harm to plaintiffs would outweigh the harm the defendant would suffer from the imposition of an injunction; and (4) the public interest would not be adversely affected by an injunction. *A.W. Chesterton Co., Inc. v. Chesterton*, 128 F.3d 1, 5 (1st Cir.1997). Plaintiffs have prevailed on the merits of their preemption claim. The preempted scheme impedes plaintiffs' ability to make timely deliveries—or in some cases to deliver at all—and thereby continually harms UPS' business and reputation among its customers. Plaintiffs incur substantial costs, nearly $5 million per year, to alter their uniform operations in order to satisfy Puerto Rico's requirements. Those costs include costs incurred for special routing and handling required for packages bound for Puerto Rico, costs of employees overseeing tax rating and reimbursement procedures, programming costs for creating Puerto Rico-specific customer tools, administrative costs, costs for accounting processes, and the losses UPS incurs for prepayments made to the Treasury Department on behalf of consignees for which UPS is unable to obtain reimbursement. UPS cannot recover those costs. Finally, the ongoing deprivation of UPS' constitutional rights which results from having to comply with the unlawful scheme in order to provide service in Puerto Rico is itself "a factor in assessing irreparable injury." *Starlight Sugar Inc. v. Soto*, 909 F.Supp. 853, 862 (D.Puerto Rico 1995), *aff'd.* 114 F.3d 330 (1st Cir. 1997).

The Court further finds that the uncontroverted facts establish that the harm to plaintiffs would outweigh any harm the defendant would suffer from the imposition of an injunction. The injunction sought by plaintiffs preserves defendant's authority and ability to collect taxes, as has been done for many years with respect to taxable items delivered by the United States Postal Service, which defendant acknowledges is not subject to the preempted scheme. Repealed Act 322 afforded the Treasury Department eighteen months to implement procedures to collect excise taxes for packages delivered by private carriers.

The requested injunctive relief will serve rather than adversely affect the public interest. Removing restrictions which impose an unreasonable burden on the free flow of interstate commerce certainly serves the public interest. Congress has

also found that enforcement of state laws related to the transportation of property "impede[s] the free flow of trade, traffic, and transportation of interstate commerce" (FAAAA, Pub.L. No. 103–305, Title VI, § 601(a)(1), 108 Stat. 1569, 1605) and has determined that FAAAA preemption "is in the public interest" (H.R. Conf. Rep. No. 103–677, at 87, *reprinted in* 1994 U.S.C.C.A.N. at 1759).

Plaintiffs are entitled to the declaratory relief they seek pursuant to 28 U.S.C. § 2201, resolving in their favor the controversy whether the challenged statutory scheme is preempted by the FAAAA pursuant to the Supremacy Clause.

Having concluded that the statutory scheme is preempted by the FAAAA and, thus, unenforceable pursuant to the Supremacy Clause, it is unnecessary to rule on the remaining constitutional challenges.

For the reasons stated, the Court hereby GRANTS plaintiffs' Motion for Summary Judgment (docket entry 23) as to Counts I and V of the Complaint and DENIES defendant's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) (docket entry 26). Plaintiffs' request for injunction pending appeal (docket entry 49) is MOOT. Judgment shall be entered accordingly.

SO ORDERED.

### ORDER

Having considered the Urgent Motion to Stay Injunction Pending Appeal Pursuant to Fed.R.Civ.P. 62(c) filed by defendant Juan A. Flores–Galarza in his official capacity as Secretary of the Treasury of the Commonwealth of Puerto Rico (Secretary) on May 3, 2002 (docket entry 71), the Supplement to Urgent Motion to Stay Injunction Pending Appeal filed by the Secretary on May 8, 2002 (docket entry 75), and the Opposition to Secretary's Motion to Stay Permanent Injunction Pending Appeal filed by plaintiffs United Parcel Service, Inc. and United Parcel Service Co. on May 10, 2002 (docket entry 76), the Motion to Stay is DENIED as we FIND that defendant has failed to meet all four factors regulating the issuance of a stay: (1) a strong showing that he is likely to succeed on the merits, (2) irreparable injury absent a stay, (3) the stay will not substantially injure plaintiffs, and (4) stay is in the public interest. *See* Fed.R.Civ.P. 62(c), *Hilton v. Braunskill*, 481 U.S. 770, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987).

The Opinion and Order issued on April 30, 2002 (docket entry 68) espouses the myriad of reasons which serve to defeat all four factors required for a stay. We briefly pause here only to address the Secretary's argument in relation to the irreparable injury which he claims would be suffered by the Commonwealth of Puerto Rico (Commonwealth) if the stay is not granted. The Secretary claims that "the injunction whose stay is being requested directly creates a void in the collection and tax evasion mechanism which may entail the loss of public revenues, in addition to forcing the government to re-tool the collection mechanism without safeguard for tax evasion. This will certainly adversely impact the revenues of the Commonwealth and the services it provides to its constituency." Urgent Motion to Stay, docket entry 71, at pp. 16–17.

The Commonwealth's authority to collect taxes, however, remains unfettered and unquestioned. The permanent injunction issued, in fact, does not prohibit the Commonwealth from continuing to collect excise taxes *on its own*. Only the particular collection mechanism which it had established to collect excise taxes through the air carriers is no longer available due to the Court's finding that it is preempted by the Federal Aviation Administration Authorization Act of 1994, 49 U.S.C. § 41713(b)(4). Said law went into effect in 1995, and since then the least that could be

reasonably expected from the Commonwealth was to begin preparations for an eventual challenge of said collection mechanism under its provisions and for an unfavorable judicial result such as the one it confronts today. It appears, however, that during all those years the Commonwealth failed to take actions or establish safeguards that would help it deal with the collection "void" it now claims. Thus, any injury being suffered by the Commonwealth as a result of the injunction is of its own making.

Notwithstanding the denial of the stay requested by the Secretary, the Court is troubled by his assertions that the efforts being conducted by the Commonwealth to collect the excise taxes on its own are being hindered by some of the air carriers. *See* Unsworn Declaration Under Penalty of Perjury of Juan A. Flores–Galarza Submitted Pursuant to 28 U.S.C. § 1746, Exhibit 1 to the Supplement to Urgent Motion to Stay Injunction Pending Appeal, docket entry 75. As this actions may be the result of a misinterpretation of the terms of the injunction, we clarify its scope: the terms of the injunction prevent the Secretary from enforcing the preempted collection mechanism, but stop short of prohibiting the collection of the excise taxes through efforts conducted by the Secretary or its employees. In this regard, nothing in the injunction shall be interpreted as forbidding the Secretary or its employees from visiting plaintiffs' premises and obtaining from the unopened *packages* (not the carrier) any information they might need for the collection of the excise tax, as long as said inspection does not affect plaintiffs' operations and the free flow of the merchandise they deliver.

SO ORDERED.